## JOHN LEWIS & another, executors, *vs.* LYMAN MASON.

On an issue whether a will was made under undue influence of the testator's son, evidence is admissible that the son, in an angry voice, told the testator, who was talking loud, to "stop his noise," and that the testator stopped.

On an issue whether a will was executed under undue influence, the fact that a petition to place the testator under guardianship was dismissed with the consent of his children, who were now contesting the validity of the will, is immaterial.

On an issue whether a will was executed under undue influence of some of the testator's children, their statements made in the testator's lifetime to another child, that he should not stay in the testator's house, and that they had got the testator where they wanted him, are admissible in evidence.

On an issue whether a will was executed under undue influence, evidence that the testator on his death-bed treated affectionately a child whom the will disinherited is admissible to show his feeling towards the child.

Upon the trial of issues whether a testator was of sound and disposing mind and memory, and whether his will was made under undue influence, a physician, not an expert in mental diseases, who had been his family physician, but not for ten years before the time of his death, who had seen him only once or twice for two or three years before said time, and had had his last interview with him five years before said time, testified that at that interview he appeared as if in the last stages of second childhood. *Held*, that the testimony was admissible.

At the trial of an issue whether a will was executed under the undue influence of A. B. the admission in evidence of a written statement, made by the testator, of the terms on which he was living with A. B., furnishes to the parties supporting the will no ground of objection, although it does not appear that A. B. saw the statement until some years after it was made.

A party contesting the validity of a will, having admitted that an attesting witness would testify that it was duly executed, may introduce evidence of statements by the witness that it was not duly executed, although such statements include the expression of opinion as to the sanity of the testator and his subjection to undue influence.

On an issue of a testator's sanity, statements as to acts of the testator showing imbecility of mind, made by a witness who has testified to his sanity, are admissible, if the witness has denied making such statements.

On issues as to a testator's sanity and whether his will was executed under the undue influence of A. B., evidence is admissible that the testator had made mortgages of his property which he afterwards stated that he did not know of, and that he had made transfers of his property to A. B.

APPEAL by John Lewis and Charles H. Lewis, from a decree of the judge of probate, allowing an instrument, dated January 19, 1863, and a codicil thereto, dated March 26, 1863, as the last will of John Lewis, Senior, and disallowing a codicil thereto, dated January 28, 1869, and an instrument, dated April 29, 1870, and a codicil thereto, dated July 29, 1870, as such last will. In the will which was allowed, the appellee was named executor; and in the will which was disallowed, the appellants were named executors.

At the trial in this court, before *Wells,* J., there was no controversy as to the will and codicil made in 1863. As to each of the other instruments two issues were framed for the jury: *First.* Whether the testator was of sound and disposing mind and memory. *Second.* Whether undue influence was exercised by John Lewis, Charles H. Lewis, and their wives Eliza Lewis and Almira H. Lewis, or either of them. The appellants contended that the proceedings hereinafter mentioned, undertaken by some of the testator's children to put him under guardianship, and their subsequent neglect to visit him, so offended him as to induce him to change the will which he had previously made in their favor. The appellee contended that those children were prevented from visiting the testator by the threats and conduct of the appellants. It appeared that the testator died on March 27, 1871.

John F. Wakefield, a physician, called as a witness by the appellants, testified, on cross-examination, as follows: " I have heard Charles H. Lewis talk in the testator's presence so as to offend

him, and several times I have heard Charles speak in an angry tone of voice.   Once he told him to shut up.   That was within the last two years of his life.   I cannot remember the subject matter; I remember the fact well; I do not remember how it occurred; the old man was talking loud; the amount of it was to ' shut up and stop his noise; ' I do not remember any other time; I never heard him speak more than once disrespectfully.   The old man would quiet down and make no more talk."   The appellants objected to the admission of this testimony, but the judge admitted it.

It appeared that in March 1870 Thomas Lewis and Nathaniel Lewis, sons of the testator, and interested with the appellee in resisting the probate of the instruments of 1869 and 1870, petitioned the probate court to appoint a guardian for the testator as insane and incapable of taking care of himself; that the judge of probate on April 26, 1870, dismissed the petition; that the petitioners appealed; and that at the ensuing October term of this court the decree of the probate court was affirmed by agreement. The appellants offered in evidence a copy of the record of this court and of the agreement, as bearing on both the issues.   The judge admitted it " for the purpose of showing the dates of the several steps in the proceedings, who signed it, and when and how served, the appeal and notice thereof; " but ruled that " it was not competent as a judgment, nor as showing the agreement or assent of parties upon which it was rendered."

Nathaniel Lewis, called as a witness by the appellee, testified that, at the time of the hearing in the probate court on the question of appointing a guardian for the testator, he was occupying a portion of the testator's house; that, just after the hearing, John Lewis, one of the appellants, said to him, " Damn you, Nat, you shall not sleep in that house again; if you come there we will break your damned head, we have got father just where we want him, you shan't stay in that house, you will have to get right out of it; " and that Charles H. Lewis, the other appellant, told him, as many as three or four times during the fortnight after the hearing, that " he would have to get out mighty quick." The appellants objected to the admission of this testimony, but the judge admitted it.

Mary Ann Badger, a daughter of the testator, called as a witness by the appellee, testified as follows : " I visited father in his last sickness. When he was sick in bed he was sick a week. He could not speak, but he reached over and squeezed my hand and said ' God bless you.' Charles was there and did not say anything." The appellants objected to the admission of this testimony ; but the judge admitted it, as tending to show the state of feeling of the testator towards the witness.

Nathan French, called as a witness by the appellee, testified that he was a physician ; that he had not been the family physician since 1860, nor was he an expert on mental diseases ; that he had not seen the testator but once or twice for two or three years, and had not spoken with him since his last sickness in 1866 ; and further as follows : " I might have been there fifteen minutes or longer. He did not know me, he seemed stupid, he seemed worn out. He had scarcely any physical powers. His son called my attention to him. He said ' O ! Dr. French.' He appeared as if in the last stages of second childhood." The appellants objected to the admission of this last statement, but the judge admitted it.

The appellee offered in evidence, as bearing on the relations between Charles H. Lewis and the testator, the following instrument, which was dated April 26, 1866, signed by the testator, witnessed by Thomas Lewis, and left with the appellee about the time of its date : " This certifies that my son Charles H. Lewis and his wife have lived with me for some years on the following terms, that is, that I was and am to furnish a house and be at all the expense for food, fuel and servants' hire and for furniture, nyself, and give my son and his wife their board for their care and attention, and the board thus furnished was and is to be in full satisfaction and payment to my son and his wife for their care and attention to me." It did not appear that Charles H. Lewis knew of the existence of this instrument until it was surrendered to the testator by the appellee in April 1870. The appellants objected to its admission in evidence, but the judge admitted it.

Joseph W. Tufts, a subscribing witness to the codicil of January 28, 1869, and the codicil of July 29, 1870, having been sum-

moned by the appellants as a witness, but not having appeared un account of sickness, the appellee admitted that he would, if present, testify to the due execution of the instruments, and that the testator was of sound and disposing mind and memory.

The appellee afterwards called Thomas Lewis as a witness, who was allowed, against the objection of the appellants, to testify as to a conversation between himself and Tufts about the competency of the testator to make a will, as follows : " He talked with me about it.   On August 19, 1871, he called at my house, and said that if he had known it was a will he would not have signed it for a thousand dollars ; that he felt he had been concerned with two rascals ; that it was a rascally piece of business with two rascals ; that the old man did not know what he was about , and that John and Charles could do what they pleased with him."

Thomas Lewis also testified as follows : " Almira H. Lewis, wife of Charles H. Lewis, has said many things.   She told me father would come in and wash his hands in the water pail, and she had to keep it locked up ; that he would paw over the food, and she had to keep that locked up."   This testimony was offered for the purpose of impeaching the testimony of Almira H. Lewis, who had been called as a witness by the appellants as to the testator's sanity and as to undue influence, and who in her testimony had denied that she made such statements, and testified that the testator was of sound mind.   The appellants objected to the admission of this testimony, because it was not in the presence of the testator, but the judge admitted it.

As bearing on both issues in the case, and for the purpose of showing that property of the testator was disposed of by Charles H. Lewis in a way that the testator did not understand, the appellee offered in evidence sundry conveyances and mortgages of real estate made by the testator since 1866, in connection with the testimony of Thomas and Nathaniel Lewis, that they had told the testator of such mortgages having been made, and his saying that he did not know it.   The appellants objected to the introduction of this evidence, but the judge admitted it.

There was also evidence tending to show that the testator made certain transfers of his real estate to Charles H. Lewis, and per-

sonal property to Almira H. Lewis, wife of Charles H. Lewis, and that Charles H. Lewis and his wife lived with the testator for about fifteen years before his death, having general charge of his household, and care of his person. The judge instructed the jury that in passing on the question of undue influence they might consider the evidence which had been introduced in reference to the disposition of his property.

The jury returned a verdict on the first issue, that the testator was of sound and disposing mind and memory; and on the second issue, that undue influence was exercised over him. The appellants alleged exceptions.

*E. Avery & J. W. Hubbard*, for the appellants.

*T. H. Sweetser & W. S. Gardner*, for the appellee.

AMES, J. We do not think that any of these exceptions should be sustained.

The fact testified to by the physician, Wakefield, was brought out upon cross-examination, and was admissible as having a tendency to show that, on the occasion referred to, Charles H. Lewis had both the power and the inclination to exert, by means of angry and imperious language, a controlling authority over the testator. The weight and importance of such testimony would be for the jury to consider, and might be very trivial if only one instance of the kind were proved. Its competency admits, in our opinion, of no doubt.

The proceedings upon the petition that the testator should be put under guardianship, as an insane person and incapable of taking care of himself, raised no question except as to his sanity. Upon the issue on that point, the verdict has been in favor of the appellants, and they have therefore not been prejudiced by the rejection of the judgment of the court upon that petition. The proceedings were competent for the purposes for which they were admitted, and have become immaterial and unnecessary for any other.

The testimony as to the language addressed by Charles to his brother Nathaniel was admissible, for the reason that it had some tendency to show a purpose on the part of the former to keep the testator under his supervision and control and to exclude other

members of the family from any opportunity to interfere.   It was at least proper for the jury to consider.   So also the fact testified to by the daughter Mary Ann had a tendency to show what was the testator's state of mind towards her, and that his affection for her continued unimpaired to the last.   It is true that he might nevertheless have reasons for giving her by his last will a smaller share of the property than he bestowed upon others of his family.   The improbability however that he would do so, if left to the exercise of his own free and unbiassed judgment, was an argument which the appellee had a right to urge, and to substantiate by all competent evidence.

With regard to the testimony of Dr. French, it appears that he had been the testator's family physician, although he had not visited him as such since 1860, and had seen very little of him since 1866.   He described the testator's apparent physical condition, and added that " he appeared as if in the last stages of second childhood."   We think that, with his professional knowledge of the testator's constitution and former condition, and competent as we must assume that he was to appreciate the appearances of decay and loss of faculties implied in his description, the last answer which he gave was admissible under the rule given in *Hastings* v. *Rider*, 99 Mass. 622.

The written instrument, signed by the testator and deposited with the appellee, setting forth the terms upon which Charles and his wife lived with the testator, was admissible as showing the relations which the latter understood to subsist between himself and them, in regard to their joint occupancy of the dwelling-house.   The appellants we think have no ground of exception to this ruling.

The agreement as to what the attesting witness Tufts would testify if present, in regard to the execution of the codicil and the sanity of the testator, gave the same right to the appellee to contradict that witness, by proof of conflicting statements on his part at other times, as if the witness had been present and had testified.   Such proof was not introduced for the purpose of obtaining that witness's opinion as to the effect of the instrument, or the conduct of the appellants, but to contradict his testimony.

The evidence offered for the purpose of impeaching the testimony of Almira Lewis stands upon the same ground.

The other facts, namely, that Charles had disposed of the testator's property by mortgage, &c., which he had induced the testator to sign, and which the testator had afterwards declared that he did not remember or understand, and that he had transferred property at different times to Charles, were proper for consideration upon the question of undue influence. Their weight and effect were of course to be passed upon by the jury.

*Exceptions overruled.*