IRA G. POTTER, executor, *vs.* JOSEPH W. BALDWIN.

Hampden. Sept. 26.—Oct. 2, 1882. ENDICOTT, LORD & FIELD, JJ., absent.

On the issue whether the execution of a will was procured by the undue influence of a third person, evidence was admitted, for the purpose of showing the state of the testator's feelings towards such third person, of conversations between the testator and his only son and son's wife, at different times during the eight years preceding the date of the will, in which the testator said that he was so under the influence of the third person that he could not resist her when he was in her presence. Evidence was further admitted, for the same purpose, and to show his state of mind towards his son, of a conversation between the testator and another person, on the night before he died, in which he said that he wished to see his son, and that he did not know but he had been deceived. *Held,* that the evidence was competent for the purpose for which it was admitted.

If no instructions are asked as to the use and effect of evidence admitted under objection at the trial, it is not open to the objecting party to contend in this court that the evidence was not limited by the judge in his instructions to the only purpose for which it was competent.

APPEAL from a decree of the Probate Court, allowing the will of John Baldwin, by his only son and heir at law. Hearing in this court, before *W. Allen*, J., who allowed a bill of exceptions, in substance as follows:

No question was made as to the formal execution of the will, and the only issue submitted to the jury was whether the will was obtained by the undue influence of Mrs. Francelia S. Lane. The will was dated January 30, 1880, and by it the testator devised and bequeathed his entire estate to said Lane. The testator died on February 17, 1880.

The judge admitted, against the appellee's objection, for the purpose of showing the state of feeling of the testator towards Lane, evidence of conversations between the testator and his son and son's wife, in 1872, in which it was testified that the testator said he was so under the influence of Lane that he could not resist her when he was in her presence. This was but a small portion of the conversations admitted, all of which was of the same character, and was admitted upon the statement of the appellant's counsel that they expected to show similar expressions of feeling from time to time up to the date of the will; and such expressions were testified to.

The judge also admitted, against the appellee's objection, for the same purpose, and to show his state of mind towards his son, evidence of a conversation between the testator and one Edward O'Neil, on the night of February 16, to the effect that the testator said he wished to see his son Joseph, and that he did not know but he had been deceived. These conversations were used by the counsel for the appellant in his argument to the jury as showing undue influence and deception by Lane. No instructions were given to the jury, or asked, as to the use or effect of the foregoing evidence.

The jury found that the will was obtained by the undue influence of Lane ; and the appellee alleged exceptions.

*D. W. Bond*, for the appellee.

*G. Wells*, (*N. A. Leonard* with him,) for the appellant.

DEVENS, J. The evidence of conversations between the testator and his son and son's wife in 1872, wherein he said that he was so under the influence of Francelia S. Lane that he could not resist her when he was in her presence, in connection with

similar expressions of feeling up to the date of the will, was properly admitted for the purpose of showing the state of the testator's feeling towards her. *Shailer* v. *Bumstead*, 99 Mass. 112. *Lewis* v. *Mason*, 109 Mass. 169. They strongly resemble those received in *May* v. *Bradlee*, 127 Mass. 414, where the question was whether a testator was induced by undue influence to revoke a will, to the effect that a certain person (through whose influence it was contended that the will was revoked) told him to erase his name, and that he felt that he had to do as this person said.

Upon similar grounds, the evidence of a conversation the night before he died, in which he stated that he wished " to see his son Joseph, and that he did not know but that he had been deceived," was admissible to show his state of feeling towards his son and Francelia S. Lane. The wish to see his son might well be considered as showing a kindly feeling toward him. *Lewis* v. *Mason*, *ubi supra*. While the declaration did not state by whom he felt that he might have been deceived, yet, when taken in connection with the evidence appearing in the case in regard to Mrs. Lane, it might have been found by the jury to refer to her and to exhibit his then state of feeling towards her.

In proving the existence of that undue influence over a testator, by which his will may be avoided, two things are necessarily to be shown, the extraneous words, acts or circumstances by which it has been exerted, and the effect thereby produced upon the mind of the testator, the former of which cannot, the latter of which may, be shown by his declarations. The difference is certainly obvious between receiving the declarations of a testator to prove an external fact, such as duress, fraud or importunate solicitation, and as evidence merely of his mental condition. In the one case, it is hearsay evidence, and open to all the objections applicable to that species of evidence, while in the other it is appropriate, and directly bears upon the issue to be tried. *Waterman* v. *Whitney*, 1 Kernan, 157, 165.

For the purpose for which it was admitted, the evidence was therefore competent. It is not to be inferred that it was applied by the jury to any other purpose. If these conversations were used at the trial by the counsel for the appellant in his argument for the purpose of showing undue influence and deception by

Francelia S. Lane, such use was certainly improper. But the counsel for the appellee asked no instructions as to the use and effect of this evidence, nor did he, so far as the bill of exceptions shows, call the attention of the presiding judge to the matter. He cannot now object that it was not limited by the presiding judge in his instructions to the only purpose for which it was competent. If evidence be admissible for any purpose, its admission cannot be made a ground of exception, unless it be shown that the judge refused to limit it to that purpose, and permitted it to be used for a purpose for which it was not competent, against the objection of the excepting party. *Howe* v. *Ray*, 113 Mass. 88. *Packer* v. *Lockman*, 115 Mass. 72. As the evidence had been admitted for a purpose we deem to have been competent, and as no instruction was requested or given limiting its effect to that purpose, we cannot infer otherwise than that both the counsel for the appellee and presiding judge deemed that the purpose of its admission had been stated with sufficient clearness at the time it was received, and that, notwithstanding the argument of the counsel for the appellant, there was no danger that the jury would be misled in its application. Had the counsel for the appellee thought differently, he certainly should have called the attention of the presiding judge to the matter. Not having done so, he has now no just ground of complaint. *Exceptions overruled.*