Matthews, J.
This is an action to contest the will of Frederick Otte, deceased. The jury returned a verdict declaring the paper writing not to be his last will, and the case is now before the court upon a motion for a new trial.
The decedent left surviving him seven children. By the paper writing dated March 20, 1916, probated as his last will, he bequeathed $200 to a divorced daughter-in-law, and gave the balance of his estate consisting largely of realty and valued at approximately $15,000 to his-daughter, Edna Otte Bullock, whom he named executrix. In this paper writing he recited that his other six children had not shown him the respect and affection due him as their father, and gave that as the reason for disinheriting them.
The evidence disclosed that in 1911, the family of the decedent divided into two hostile factions. While there had been *306 dissension in the family for some years, the final disruption was postponed until that date. The circumstances and cause of the division in the family were in dispute. There is no doubt that the subject of the dispute which caused the division of the family was Edna Otte Bullock. Those children who were contesting the will claimed that at and prior to that time Edna Otte Bullock had acquired a dominating influence over her father, and that she used that influence to cause him to take a hostile attitude toward his wife and all the other children. The decedent' at' that time served legal notice on two of his children to leave his home, and as a result of the controversy the mother and all the children who were then living at home, other than Edna Otte Bullock, left and never returned thereto. Edna and her father continued to live in the home property until his death in December, 1917, and during that time, to-wit, on March 20, 1916, the decedent executed the paper writing which was probated as his last will. From the time that the mother left home and the other children sided with her., there was no friendly communication of any sort between the decedent and them. During that period the wife prosecuted an alimony suit against the decedent, and in that case her children, other than Edna, rendered her such assistance as. they could. The contestants relied on undue influence and testamentary incapacity to set aside this paper writing as a will. At the trial the court admitted evidence of declarations made by the decedent, just prior to the'disruption of the family, for the purpose of showing his, attitude toward the various members of his family, and also for the purpose of showing his testamentary intentions toward them at that time. The court also admitted declarations made by Edna reciting her influence over her father, and of her purpose to use that influence.
It 'is urged now that the court erred in admitting declarations made by the decedent at that time, on the ground that those declarations were too remote from the time when the will was made. The court admitted the declarations on the theory that inasmuch as the contestants claimed, and produced evidence from which the legitimate inference could be drawn, that *307 prior to 1911 Edna had acquired a dominating influence over her father, and that this influence culminated in 1911 in causing her father to allow his wife to leave their home and to disown all his other children, and that this influence was exclusive from that time to the time of the making of the will, and that therefore the intention and mental attitude of the decedent just prior to the acquiring of this exclusive domination over the decedent were obtained, were material as being evidence of the last free exercise of his faculties and affections. The court is now of the opinion that such declarations, in view of the particular circumstances of this case, were not too remote to have probative value.
It is also objected that there was no substantial evidence of undue influence, and that therefore the court erred in charging the jury upon that subject. There is no objection to the charge as given, but it is urged that that issue should not have been submitted at all. The court is of the opinion that there was evidence of undue influence; that, like most cases involving this issue, the evidence was circumstantial and inferential, but that it was sufficient to justify the court in submitting the issue to the jury, and that therefore the court did not err in instructing the jury upon the law applicable to undue influence. However, inasmuch as there were two issues submitted to the jury, even if the court did err in submitting one of them, that would be no ground for disturbing the general verdict, unless it also appeared that the court erred with reference to both issues.
This rule was recently reaffirmed in the case of Niemes v. Niemes, 97 Ohio St., 145, in which the court, at page 149, said:
“We are still further of opinion that if it be granted that the improper inclusion of the language as to the several species of undue influence — which was entirely unsupported by proof— was prejudicial error, the defendant in error can not take advantage of the. error, being precluded therefrom by the doctrine first asserted in Ohio in the ease of Sites v. Haverstick et al 23 Ohio St., 626, and recently reasserted in State, ex rel Lattanner, v. Hills, 94 Ohio St., 171, 182. This well known rule of law is that where, upon the issues made by several defenses to a claim sued upon, a general verdict is found for the defendant, it not *308 being disclosed by answers to interrogatories or otherwise upon which issue the verdict was based, and the record disclosing no error touching either the presentation or submission of at least one of such issues, a finding upon which in favor of the prevailing party would justify a general judgment which is rendered, error of the trial court in the submission of other issues will be disregarded.”
It is urged more strongly, however, that the court erred in admitting evidence of declarations made by Edna Otte Bullock as to her influence over her father and her declaration that she would get all the estate.
It is urged that this evidence comes within the inhibition of the rule announced in Thompson v. Thompson, 13 Ohio St., 356, in which it was held that where there are several devisees or legatees whose interests may be injuriously affected, declarations by one devisee or legatee in reference to the mental capacity of the testator, are inadmissible. In that case the court refused to admit evidence to the effect that one of the beneficiaries had informed the witness that the testator was insane and incapable of transacting business.
Counsel also relies on the recent ease of Seal v. Goebel, Excr., et al, 11 C. C. (N. S.), 433, as supporting his contention. In that ease the court excluded evidence of whát a beneficiary had stated after the will was made, tending to show that the will as drawn was not in conformity to the intentions. of the testator, and the court in excluding this evidence followed Thompson v. Thompson, supra, saying:
“We think it well settled that declarations of a party to the record of a case, who is a legatee with others under the will, in a suit to contest the will, are inadmissible to prove that the will was contrary to the testator’s intentions or was procured by undue influence, other parties or legatees being affected thereby. ’ ’
In the opinion of the court, there is a clear distinction between the evidence admitted in this case, showing the mental attitude of Edna, and the evidence excluded in Thompson v. Thompson and Seal v. Goebel. In the latter cases the declarations were made after the transaction and simply constituted *309 the opinion of the witness as to a past transaction or condition, whereas, the evidence admitted in the case at bar in no sense related to something that had occurred in the past, but was simply a verbal manifestation of an existing design and purpose. In the opinion of the court its admission was authorized under the rule laid down in Schock v. Schock, 6 C. C. (N. S.), 110, the third paragraph of the syllabus of which is as follows:
“Declarations of a witness which tend to show the state of mind of the witness, and which afford circumstantial evidence of her purpose and design in treating the testatrix as she did in her last illness with apparent kindness and affection, are admissible. ’ ’
This whole subject of the admissibility of the declarations of a beneficiary is elaborately discussed in a note to the case of James v. Fairall, Excr., etc., 38 Lawyers Reports, Ann. (N. S.), 731, and the annotator analyses and classifies the various forms of declarations, and among other eases referred to is the case of Schock v. Schock, supra. lie classifies this case under the heading- of “To show intent or disposition.” His entire note under that heading is as follows:
“Sometimes such declarations will be received not for the purpose of invalidating the will directly, but to show general intent or disposition of declarant to control the testator. Lewis v. Mason, 109 Mass., 169. (No discussion of the principle involved and no authorities given.) Julke v. Adam, 1 Redf., 454. (Made by a legatee of two-thirds of the entire property, being the widow of testator, in conjunction with other evidence of a dominating influence exercised by her.) Schock v. Schock, 27 Ohio C. C., 828. (Made by wife of a beneficiary prior to death of testatrix, the wife not being a party to the suit, and received in connection with proof of her actions tending to show ill-will toward testatrix and a design to induce a favorable will by feigning kindness and affection.) Brush v. Holland, 3 Bradf., 240. (Made by a legatee, executrix, and propounder.) ”
Examining Lewis v. Mason, referred to in the foregoing note, we find the rule stated in this language:
‘ ‘ On an issue whether a will was executed under undue influence of some of the testator’s children, their statements made *310 in the testator’s lifetime to another child, that he should not stay in the testator’s house and that they had got the testator where they wanted him, are admissible in evidence.”
And in Julke v. Adam, on the same subject, the court says at page 460:
‘ ‘ This testimony, as to the language and declaration of a person against whom undue influence is charged, was taken subject to objection; but I admitted it all, as it is clearly competent showing declarations of a person so situated, so far as they tend to prove an existing intent and disposition.”
And in Brush v. Holland, at 243, the court says:
‘ ‘ There is a point of view still in which the proposed evidence may be admissible when a party is accused of having effectuated a certain act by undue means, if the facts show an opportunity for the accomplishment, I can not say that the predisposition of the party to produce that precise result is immaterial, or that his declarations evincing his intention are incompetent evidence. ’ ’
It is true that the declarant,' in Schock v. Schock, supra, was not a beneficiary, but the principle is the same and this is shown by its collation in 38 L. R. A. (N.S.), supra, with eases in which the declarants were beneficiaries, while Thompson v. Thompson, supra, is cited as supporting the general rule to which declarations showing “intent or disposition” form an exception.
It is the opinion of the court that the declarations of Edna admitted in evidence were not admissions and incompetent under the rule laid down in Thompson v. Thompson, but were declarations of her intent and disposition and competent evidence to prove her intent and disposition under the rule laid down in Schock v. Schock, and the other cases heretofore cited on that subject.
Lastly, it is objected that the court erred in overruling the motion of the defendant to strike out the answer of the witness, Rolling, as to his opinion of the mental condition of the decedent. The witness was asked this question:
‘ ‘ Q. During the. time you knew him, was he, in your opinion, of sound or unsound mind?”
*311 The witness answered:
“A. Well, I never did think he was of sound mind the way he used to carry on.”
The ground of the objection is based on the case of Runyan v. Price, 15 Ohio State, 1. In that case a witness was asked:
“Q. State what your opinion was, on the evening Bowen called upon you to witness the will, as to the sanity or insanity of William Runyan, or his capacity to make a will?”
The court sustained the objection to this question, and the supreme court affirmed the trial court, saying at pages 13 and 14::
‘ ‘ In the first place it sought the opinion of the witness, not at the time of the delivery of his testimony, but the opinion he had entertained several years before, and which subsequent consideration and reflection may have satisfied him was erroneous. This was on the examination, in chief, by the party, of his own witness. As well might he have claimed to prove the oeeurrance of facts by interrogating witness as to his understanding or recollection, in regard to them years before, instead of at the time of his examination.”
The situation before the court is not the same as it was in Runyan v. Price. The question propounded to the witness in this case called for his present opinion. Whether, under such circumstances, where the question is in the present tense and the answer is in the past tense and the court overrules a motion to strike the answer out, error is committed, and whether that error is prejudicial, the court does not stop to inquire, for the reason that in the opinion of the court the answer of the witness is not open to the objection that it merely states an opinion which was entertained at a past time. The language of the answer is, “I never did think he was of sound mind.” The dictionaries define the word “never” as follows: “Not ever; at no time, whether past, present or future.” As the court construes the answer of the witness, he was giving his present opinion, and therefore it is unobjectionable under the rule laid down in Runyan v. Price. In Dunlap v. Dunlap, 89 O. S., 28, at *312 32, the Supreme Court says that, in any event, an error, if any, such as the one here under discussion, is not of such substantial and prejudicial nature as to warrant the setting aside of a verdict.
The evidence in this case was conflicting. Witnesses testified to facts and circumstances tending to show testamentary incapacity, and various witnesses gave their opinion that the decedent was mentally unsound. Other witnesses testified in support of the testamentary capacity of the decedent. This mass of conflicting evidence was submitted to the jury and it returned a verdict setting aside the paper writing as a will.
Under the circumstances, it is the opinion of the court that the issue was one pre-eminently for the jury, and inasmuch as in the opinion of the court the issue was properly submitted to it, the motion for a new trial is overruled.