GEORGE E. LANE vs. JOSEPH A. MOORE.

Essex.　November 7, 1889. — February 26, 1890.

Present: FIELD, DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Gift inter Vivos — Undue Influence — Evidence — Declarations.*

On the issue whether a gift was invalid as procured by undue influence, after evidence to show that the faculties of the donor were so far impaired at the time as to make him readily susceptible to influence and pressure, his declarations made from one to four months after the time of the alleged gift, relating to the disposition of his property and his relations with the donee, upon whom his expressions reflected, were admitted in evidence only as bearing upon the donor's state of mind at the time of the alleged gift. *Held,* that the declarations were competent.

TORT, by the administrator of the estate of Nathan W. Fellows, for the conversion of a promissory note.

At the trial in the Superior Court, before *Mason,* J., it appeared that the intestate died on December 10, 1887, at the age of eighty-four years and four months; that for several years before his death he had not worked at his trade, which was that of a blacksmith and stone-cutter; that from May 1, 1884, until his death, the defendant, who was the son of a niece of the testator, acted as his business manager and adviser, and was the custodian of his title deeds and bank-books. The defendant, who was called as a witness by the plaintiff, testified, that on August 7, 1884, he lent to one Todd, who was the defendant's father-in-law, five thousand dollars belonging to the intestate, with the latter's knowledge and consent, and took the note in question of Todd therefor, which was made payable to the order of the intestate, with interest, in six months from date; that this note was renewed five times, the interest being paid by Todd to the defendant, and by him to the intestate; that just before the note, as renewed, became due, on August 7, 1887, the intestate sent for the defendant to call and see him, and he did so at once, at the intestate's house; that the intestate said he was not feeling well, and that he had got most through; that the intestate then went upstairs and came back with the Todd note, and told the defendant that he wished him to have it, and that it was his; that the

intestate got a pen and ink, and wrote his name on the back of the note so that the defendant could use it, and told the defendant that he wished him to have it and keep it, and that he hoped he would make good use of it; that he had a thousand dollars in the savings bank in addition to his home, which was all clear, and that amount would be more than enough to carry him through; and that up to the time of the intestate's death he and the defendant were on very friendly terms.

The plaintiff contended that no gift was ever made by the intestate to the defendant, and that, if any was made, it was procured by fraud and undue influence, practised upon an old man in his dotage and unused to business by his confidential adviser and business manager, and offered further evidence tending to prove the intestate's mental condition. Among other witnesses, the plaintiff called one Ricker, who, against the defendant's objection, testified that on or about November 4, 1887, he had a conversation with the intestate, in which the latter said, that he might as well spend his money as to leave it in a few days to be quarrelled about; that he wished to spend a sum of money for curbstones around a cemetery lot; and that he proposed to have his will made. One Dennison, called by the plaintiff, testified, against the defendant's objection, that he had a conversation with the intestate in the early part of September, 1887, during which the intestate showed him a memorandum respecting the Todd note in the defendant's handwriting, upon which the intestate, referring to this memorandum, said, "What do you think of that?" that "it was a damnable thing, that he could put Moore through for it and shut him up," and that he knew nothing about Todd, and had nothing to show for the five thousand dollars he had lent him. The plaintiff testified, against the defendant's objection, that in the early part of September, 1887, the intestate said to him that the defendant had let Todd "have some of his money, and he had n't anything to show for it," that he should hold the defendant "accountable for it," and that the defendant was "a great rascal."

The judge instructed the jury, in substance, that the plaintiff sought to recover on two grounds; first, that the defendant's story as to the alleged gift to him was untrue, and was a fraud

and pretence, and that there was no gift in form even; secondly, that if there was a gift in form, such were the relations between the intestate and the defendant that there was undue influence exercised by the latter, and it was not the free and intelligent act of the intestate and thus was not valid; that upon the first proposition, namely, that there was actual fraud by the defendant, the intestate's declarations were not evidence in behalf of the plaintiff; that, if the jury were not satisfied that there was actual fraud, but were satisfied that there was a gift of the Todd note in form, then they were to inquire whether there was undue influence, and upon this question an important element was the condition of mind of the intestate; that his age and his peculiarities of mind were all competent matters for consideration in determining whether undue influence was exercised; that it was upon this issue that the testimony with reference to his declarations about his business and about this particular transaction were competent; that they were not competent as evidence of the facts stated by the intestate, but were competent to be considered in estimating the condition of his mind as to how far he was competent to transact business, how far he was susceptible to influence from his confidential agent, and how far he was competent to act independently upon his own judgment; that in the heat of argument counsel had argued to them from the testimony with reference to the intestate's declarations upon the question of actual fraud; that they were to bear in mind, however, that that testimony was not competent for their consideration upon that question; and that it was competent only upon the question of the mental condition of the intestate, and his susceptibility to the influence which it was alleged was exercised by the defendant, and which they were to consider with reference to all the circumstances of the relations between the parties.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*W. S. Knox,* (*H. F. Hurlburt* with him,) for the defendant.

*E. T. Burley,* ( *W. A. Pew, Jr.* with him,) for the plaintiff.

C. ALLEN, J.   The only question argued is as to the competency of the declarations made by the plaintiff's intestate after the time of the alleged gift to the defendant.   Where the

mental condition of a person at a particular time is in issue, his appearance, conduct, acts, and declarations, after as well as before the time in question, have been held admissible in evidence if sufficiently near in point of time, and if they appear to have any tendency to show what that mental condition was. The question has usually arisen in cases involving the validity of wills, but the principle is the same where the validity of a gift is questioned, and where responsibility for crime is to be determined. *Shailer* v. *Bumstead,* 99 Mass. 112, 122, 123. *Lewis* v. *Mason,* 109 Mass. 169. *May* v. *Bradlee,* 127 Mass. 414, 420. *Potter* v. *Baldwin,* 133 Mass. 427, 429. *Whitney* v. *Wheeler,* 116 Mass. 490. *Commonwealth* v. *Pomeroy,* 117 Mass. 143, 148. *Commonwealth* v. *Damon,* 136 Mass. 441, 448. So where the question was whether a testator by cancelling a will intended to revive a former will, it was considered that his subsequent declarations were competent for the purpose of showing what his intention was. *Pickens* v. *Davis,* 134 Mass. 252, 257, 258, and cases there cited. In all such cases, the evidence is received merely for the purpose of throwing light upon the state of mind of the person at the time in question, and not as tending to establish the truth of any facts which may have been stated by him.

There are certain proper limitations to the admissibility of such evidence. One is, that the matters testified of should be sufficiently near in point of time, so that the testimony may be of value in determining the question which is directly in issue. Another proper limitation is, that the testimony should appear to have some natural bearing upon the mental condition of the person, or his intention at the particular time which is immediately involved in the issue.

It is contended by the defendant, that some portion of the testimony which was admitted against his objection failed to conform to the latter of the requirements above mentioned, and that the judge erred in allowing it to go to the jury. Ordinarily questions of this character must in the first instance be determined by the presiding judge, as questions of fact, and, if his determination is in favor of admitting the testimony, it then goes to the jury for them to decide as to its weight. For example, the judge will determine whether the time is so remote, or whether the circumstances have so changed, that declarations then made

would not be deemed satisfactory evidence tending to show the person's condition at the earlier period. Evidence was excluded for this reason in *Davis* v. *Davis*, 123 Mass. 590, 598, and in *White* v. *Graves*, 107 Mass. 325. Where, in determining a preliminary question of this description, there is no erroneous application of any principle of law, it is difficult for us upon a bill of exceptions, which merely presents questions of law, to reconsider and reverse the decision. The matter necessarily rests chiefly in the discretion of the presiding judge. Usually, the question is not strictly a legal one. The judge determines, chiefly as a question of fact, whether under all the circumstances the testimony bears a sufficiently close relation to the question in issue to render it proper to be considered by the jury, and ordinarily his determination of this preliminary question must be accepted as conclusive. *Shailer* v. *Bumstead,* 99 Mass. 112, 130. *Commonwealth* v. *Coe*, 115 Mass. 481, 505. *Commonwealth* v. *Abbott*, 130 Mass. 472, 474. *Commonwealth* v. *Robinson,* 146 Mass. 571, 580.

In the present case, it is impossible to say that the judge has misapplied any rule of law. There was enough evidence of an impairment of the mental faculties of the plaintiff's intestate, before and at the time of the alleged gift to the defendant, to warrant the introduction of evidence as to his condition afterwards. He was almost eighty-four years old. For several years he had not worked at his trade. For over three years the defendant had been his business manager and adviser, and the custodian of his title deeds and bank-books. His conduct in allowing the defendant to manage his property in the manner testified to, and, above all, the alleged gift itself, under the circumstances stated by the defendant, would naturally awaken a suspicion that the faculties of the plaintiff's intestate were so far impaired as to make him readily susceptible to influence and pressure. A foundation being thus laid, the plaintiff might properly show his condition afterwards. In order to show this, anything said or done by the plaintiff's intestate, or in his presence, with his conduct or comment thereupon, would in its nature be admissible. There was no such lapse of time, or marked change in his condition, as to enable us to say that the evidence should have been excluded. Nor can we say that any

of his declarations, as testified to, had no natural bearing upon his previous mental condition. Impairment of mental faculties in particular cases may be indicated by lack of self-control, by undue excitement, by anger, by forgetfulness, or by the use of strong expressions or expressions of astonishment at what has taken place. The fact that such expressions reflected upon the defendant may have been disadvantageous to him in the trial, but it did not render the testimony incompetent. Its weight, of course, was for the jury, who were carefully and more than once instructed that any subsequent statements were not to be considered as tending to prove fraud, or to show that the facts were as stated, but only as bearing upon the state of mind of the plaintiff's intestate. Upon the whole case, we see no error in matter of law.                        *Exceptions overruled.*