GEORGE M. WOODWARD *vs.* MARY SULLIVAN & others.

Worcester.  September 30, October 2, 1890. — November 25, 1890.

Present: FIELD, C. J., DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Will — Mental Soundness of Testatrix — Evidence.*

Upon the issue, among others, of the mental soundness of a testatrix, who left the residue of her property, consisting principally of real estate, to strangers to her blood, the executor, to show the small value of this residue which was in dispute, was allowed without objection to introduce in evidence a bond, signed by her nearly thirty months before the date of the will, for the conveyance of such real estate for a comparatively moderate sum. To meet this, a letter dated four days after the signing of the bond was admitted, in which she claimed that the bond was signed by her under duress, and did not bind her. *Held,* that the letter was properly admitted in evidence.

APPEAL, by the heirs at law of Catharine M. Houlihan, from a decree of the Probate Court allowing her will. At the trial in this court, before *W. Allen,* J., upon the issues of due execution of the will, of the mental soundness of the testatrix, and of fraud or undue influence, the jury answered the last issue in the affirmative, and the executor alleged exceptions to the admission of certain evidence, the nature of which appears in the opinion.

*F. P. Goulding & F. A. Gaskill,* for the executor.

*W. S. B. Hopkins & R. Hoar,* for the appellants.

C. ALLEN, J.  The contestants contended that the testatrix had not sufficient mental capacity to enable her to execute a valid will, or at least that her mind was so weak that she was liable to be imposed upon, and that in point of fact the execution of her will was procured by undue influence or fraud. In order to show such mental weakness, they introduced evidence, amongst other things, tending to show that the residue of her estate, which was left to strangers to her blood, was of great value. The issue upon which the evidence bore was, What was her mental condition? A legitimate argument that her mind was unbalanced or weak might be addressed to the jury, if in point of fact the residue was of great value, whether she knew and appreciated its value or not.

The executor, on the other hand, contended that the value of the residue was less than had been supposed by the contestants, and as evidence of this he was allowed without objection to introduce two bonds executed by the testatrix in February, 1887, nearly thirty months before the date of the will, according to the terms of which she had bound herself to convey real estate, which constituted the principal part of her property, for a comparatively moderate sum. This evidence was put in, as the bill of exceptions states, upon the question of the value of the estate, and it certainly would have a direct tendency to show her opinion of its value at the time she signed the bonds, and this would be its chief and most obvious significance, though more remotely it might also have some bearing upon the actual value of the land, as showing a sort of incumbrance upon it. But the issue on trial upon which this evidence bore was, What was her mental condition ?

In order to meet this evidence of the executor, the contestants then sought to show that, four days after the bonds were signed by her, she claimed that she was not bound by them, and that they were not freely signed by her. If the contestants could have shown that the bonds were not in fact signed by her, but were forgeries, or if they could have shown that in point of fact they were not freely signed by her, but were executed under duress, there can be no doubt that such evidence would have been properly received, as directly meeting the evidence of the executor. The contestants, however, did not offer to show that in point of fact the bonds were executed under duress, but that four days after they were signed she said that they were. Now if declarations by her to that effect could be proved, they would not be competent for the purpose of showing that in point of fact the bonds were executed under duress, but they would have some tendency to show her state of mind at that time. When mental weakness is sought to be established in a case of this kind, a common form of evidence is to show that at some time prior to the time immediately in question the person was vacillating, wavering, doing something on one day and disclaiming it or professing ignorance of it on the next, and the like. The court might have re- . ceived evidence from the contestants in the first instance to

show that she had executed a bond at the time referred to, and shortly afterwards had denied the fact, or repudiated the bond. When in the present case the executor had put in, for his own purposes, the fact that she had executed these bonds about thirty months before the date of the will, the court might properly, in its discretion, receive from the contestants evidence of statements or acts by her shortly afterwards, to support the theory that at that time she was of weak mind, and thus to furnish an argument that at the date of the will she was also of weak mind. The evidence might also have some tendency to impair before the jury the executor's theory as to the value of the land; but, whether competent for this purpose or not, it had a legitimate bearing upon her mental condition. *Shailer* v. *Bumstead*, 99 Mass. 112, 120–123. *Potter* v. *Baldwin*, 133 Mass. 427. *Lane* v. *Moore*, 151 Mass. 87.

But the evidence which the contestants offered in reply did not consist of direct personal statements made by her. That which was offered was a letter signed by her attorney, addressed to the persons who were then supposed to be the obligees in the bonds, and referring directly to statements made by her. It was proved that her attorney "was authorized to write said letter." We must understand this to mean that she authorized him to write that particular letter, as it was written. It is the same as if she had sat by when it was written, and heard it read, and sanctioned it. This makes the statements contained in the letter her statements. They have the same relevancy as if made by herself personally. The letter, therefore, had some significance, as bearing upon her state of mind. It was dated only four days after the date of the bonds. It shows that she was already consulting legal counsel, and taking steps to avoid her bonds. It was proper to allow the jury to consider this evidence, so far as it would aid them in judging of her mental strength or weakness. The length of time prior to the making of the will was not such that we can say, as matter of law, that it was too remote; and the letter was put in to meet evidence, which the executor himself had introduced, of her acts at that time.

*Exceptions overruled.*