COMMONWEALTH *vs.* JAMES A. TREFETHEN & another.

Middlesex.    September 6, 1892. — October 19, 1892.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Homicide — Exceptions — Declarations showing State of Mind or Intention — Exercise of Judicial Discretion — Examination of Juror — Admissions — False Statements of Facts.*

In an indictment for murder, the Attorney General having asked that, if the direct evidence favorable to the theory of suicide should be thought important, the exceptions might be amended to show what it was, intimating that in his opinion it was unworthy of serious consideration, the court said that, without considering the remedy, if any, open to the Attorney General in a criminal case when there was reason to suppose that the defendant's exceptions were not sufficiently full, the facts were such in the case before it that suicide would naturally suggest itself as a possible explanation of the cause of death, and that, if it was true that the direct evidence was inconsiderable, yet the circumstances afforded evidence of the theory of suicide which must be considered; and the amendment, if made, would afford no aid to the court.

When evidence of declarations of a person are offered to show his state of mind or intention at the time the declarations were made, they may be so remote in point of time, or so altered in import by subsequent change in the circumstances of the maker, as to be wholly immaterial, and wisely to be rejected by the judge; but the discretion to be exercised by the judge or judges presiding at the trial, in the admission or rejection of this kind of evidence, is not an absolute one, and the exercise of it when the facts appear may be revised by this court.

When evidence of the declarations of a person is introduced solely for the purpose of showing what the state of mind or intention of that person was at the time the declarations were made, the declarations are to be regarded as acts from which the state of mind or intention may be inferred, in the same manner as from the appearance of the person, or his behavior, or his actions generally.

The trial judges refused to permit counsel for the defendant to ask a juror, under examination on the *voir dire* " to what extent he had read about the case in the newspapers." *Held,* that if the examination of a juror after the statutory questions had been put and answered was within the absolute discretion of the trial judges, this court could not revise it; and if it was not, that, as there was no statement of what there was any reasonable expectation of proving, it did not appear that the trial judges had erred.

If a defendant is charged with crime, and unequivocally denies it, and this is the whole conversation, it cannot be introduced in evidence against him as an admission. If any part of a conversation with the defendant put in evidence tends to show directly or indirectly that he is guilty of the crime charged, the defendant has the right to have put in evidence all that was said to and by him at the same time, and relating to the same subject, although it is in his favor.

A statement made in the presence of the defendant, to which no reply is made, is not admissible against him, unless it appears that he was at liberty to make a reply, and that the statement was made by such person and under such circum-

stances as naturally to call for a reply unless he intends to admit it.  But if he makes a reply wholly or partially admitting the truth of the facts stated, both the statement and reply are competent evidence.

When the reply of a defendant to a statement made to him, which, if true, tends directly or indirectly to prove that he is guilty of the crime charged, is not an unequivocal affirmation or denial of the truth of the statement, difficult questions must often arise in determining whether the reply is of such a character that it has any tendency to show a consciousness of guilt which will warrant its admission as evidence against him.  Perhaps a certain discretion must be left to the presiding judge or judges in view of all the circumstances of the case.  The same is true when the conduct and declarations of the defendant are put in evidence for the purpose of showing a consciousness of guilt on his part.

When a defendant in a criminal case is shown to have made certain false statements of facts, and these facts are relevant to the issue, the fact that the defendant has knowingly made the false statements may have some tendency to show that he is guilty; but the jury must first be satisfied beyond a reasonable doubt that the defendant made the statements, and that they were false, and that the defendant knew that they were false, before any weight can be given to this evidence, unless the statements of themselves have some tendency to show his guilt.  But when the defendant denies generally that he is guilty, this statement cannot be shown to be false except by proving that he is guilty beyond a reasonable doubt, and then it is unnecessary.  If there is a reasonable doubt of his guilt on all the other evidence, the fact that he unequivocally denied his guilt is not of itself evidence against him, and the denial cannot be assumed to be false, because it has not been proved to be false by sufficient evidence.

INDICTMENT, in four counts, for the murder of Deltena J. Davis, on December 23, 1891, by drowning.

At the trial in the Superior Court, before *Mason*, C. J., and *Blodgett* and *Hammond*, JJ., the jury returned a verdict of guilty of murder in the first degree against the defendant Trefethen, and a verdict of not guilty for the defendant Smith; and Trefethen alleged exceptions.  The facts appear in the opinion.

*J. D. Long & W. Schofield*, for the defendant.

*A. E. Pillsbury*, Attorney General, for the Commonwealth.

FIELD, C. J.   The principal exception is to the refusal of the court to admit the testimony of Sarah L. Hubert.  The exceptions recite:

" Sarah L. Hubert, a witness called in behalf of the defendant, testified that her business, which she advertised in the newspapers, was that of a trance medium; that on December 22, 1891, in the forenoon, after ten o'clock, a young woman called at her place of business in Boston for consultation.  There was sufficient evidence to go to the jury of her identification as Deltena J. Davis.  Upon objection being made to the testimony

of this witness, counsel for the defendant stated to the court, aside from the jury, that they offered to prove by this witness that, at the interview on December 22, the young woman aforesaid stated to the witness that she was five months pregnant with child, and had come to consult as to what to do, and added later in the interview that she was going to drown herself. The court refused to admit the testimony, and the defendants duly excepted. . . .

" The evidence offered in behalf of the Commonwealth was wholly circumstantial, and tended to show that on December 23, 1891, Deltena J. Davis left her home in Everett àt about seven o'clock in the evening, and was last seen on the corner of Ferry Street and Broadway, which is near her home in said Everett, at about twenty-five minutes of eight the same evening. On January 10, 1892, her dead body was found in the Mystic River, a short distance below the Wellington Bridge, about three miles from her home. There were no marks of violence on the body when found, nor was there any evidence that poison had been administered, nor did her clothing show any signs of violence. . . . The physicians called in behalf of the Commonwealth testified that the cause of death was drowning, and that, from the stage which digestion had reached, death occurred between two and a half and three and a half hours after the deceased had eaten her last meal. There was evidence that the deceased ate her supper about five o'clock on the evening of December 23, and that the partly digested food found in her stomach corresponded with that which it was testified she ate at that meal.

" The deceased was unmarried, and at the time of her death was pregnant with a male child, and was about five months advanced in the state of pregnancy. The defendant contended and argued, without objection, that all the evidence introduced in behalf of the Commonwealth was reasonably consistent with the theory that the deceased came to her death by suicide. There was evidence in the case tending to negative the circumstances relied upon by the Commonwealth, and to support the theory of suicide."

At the argument in this court, the Attorney General asked that, if the kind and amount of evidence tending to support the theory of suicide should be thought by the court to be impor-

tant, the exceptions might be amended so as to show exactly
what this evidence was, and he intimated that, in his opinion,
this evidence was so slight as to be unworthy of serious consid-
eration.    We understand that by evidence the Attorney General
meant direct evidence tending to prove suicide.    Without con-
sidering what remedy, if any, is open to the Attorney General
in a criminal case where there is any reason to suppose that the
exceptions taken by the defendant and allowed by the court are
not sufficiently full, we are of opinion that, in the present case,
the facts are such that suicide would naturally suggest itself as
a possible explanation of the cause of death, and that, if it be
true that the direct evidence tending to prove suicide is incon-
siderable, yet the circumstances afford evidence in support of
the theory of suicide which must be considered by the jury.
The amendment, therefore, if it were made, and were of the
character suggested, would afford no aid to the court in deter-
mining the questions of law raised by the exceptions.

A few minor suggestions of the Attorney General may be
briefly disposed of.    There was evidence on the part of the
Commonwealth that the deceased did not leave her home on
the 22d of December until three o'clock in the afternoon, and
that she returned home between eight and nine o'clock, and the
Attorney General argues that " this furnishes sufficient reason
for the exclusion of the evidence" offered, " in the discretion of
the court."    But the jury might have disbelieved this evidence
of the Commonwealth, or, if they believed it, might also have be-
lieved that the deceased had the interview with Sarah L. Hubert
in the afternoon rather than in the forenoon of December 22.
The Attorney General also argues that " the statement was so
remote in point of time from the disappearance and death of
Tena Davis, that it was in the discretion of the court to exclude
it for this reason."

When evidence of declarations of any person is offered for
the purpose of showing the state of mind or intention of that
person at the time the declarations were made, the declarations
undoubtedly " may be so remote in point of time, or so altered
in import by subsequent change in the circumstances of the
maker, as to be wholly immaterial, and wisely to be rejected
by the judge."    *Shailer* v. *Bumstead*, 99 Mass. 112, 120.    It has

been many times said that "some limit must of course be had in applying practically the rules which govern the admission of this evidence." *Shailer* v. *Bumstead,* 99 Mass. 112, 130.

This subject is considered in *Commonwealth* v. *Abbott,* 130 Mass. 472, and in the cases there cited. There is undoubtedly a discretion to be exercised, by the judge or judges presiding at the trial, in the admission or rejection of this kind of evidence, but it is not an absolute discretion, and the exercise of it, when the facts appear, may be revised by this court. If the declaration, evidence of which was offered in the present case, had been made by the deceased two or three years before her death, when she was not pregnant with child, and did not know the defendant, it might well have been held by the presiding judges to be of no significance in the case.

In the case at bar, the evidence offered was that the declaration of the deceased was made the day before her death, and was made in a conversation concerning her pregnancy, which continued until her death. The declaration, therefore, was not made at a time remote from the time of her death, and there had been no change of circumstances which made it inapplicable to the condition of the deceased at the time of her death. It was clearly competent for the jury to find, from the evidence recited in the exceptions, that, if Deltena J. Davis had an intention to commit suicide on December 22, she continued to have the same intention on December 23. If the evidence in its nature was admissible, the court, on the facts stated, could not exclude it on the ground that, from the lapse of time or change of circumstances, it had ceased to be material.

It ought to be said that there is nothing in the exceptions indicating that the presiding judges refused to admit the evidence on the ground that it was in their discretion to admit or reject it. They probably considered the question presented as settled by the decision of this court in *Commonwealth* v. *Felch,* 132 Mass. 22.

The main argument of the Attorney General is, first, that it is immaterial whether the deceased, at or before the time of her death, had or had not an intention to commit suicide; and, secondly, that, if she had such an intention, it could not be proved by evidence of her declarations that she was going to drown

herself.   The burden was on the Commonwealth to prove beyond a reasonable doubt that the defendant killed the deceased, and to do this the jury must be satisfied beyond a reasonable doubt that she did not kill herself.   The nature of the case proved by the Commonwealth was such, that it was not impossible that she had committed suicide.     If it could be shown that she actually had an intention to commit suicide, it would be more probable that she did in fact commit it than if she had had no such intention.

If it could be shown that during the week before her death she had actually attempted to drown herself, and had been prevented from doing it, it seems manifest that this fact, according to the general experience of mankind, would have some tendency to show that she might have made a second attempt, and accomplished her purpose.

It may be true that an unmarried woman pregnant with child, if she has an intention to commit suicide, does not always carry that intention into effect, although she have an opportunity; but it is impossible to say that the actual existence of such an intention does not tend to throw some light upon the cause of death of such a woman when found dead under circumstances not inconsistent with the theory of suicide.

It is a question of more difficulty whether evidence of the declarations of the deceased can be admitted to show such an intention.   The argument, in short, is that such evidence is hearsay.   It is argued that such declarations are not made under the sanction of an oath, and that there is no opportunity to examine and cross-examine the person making them, so as to test his sincerity and truthfulness, or the accuracy and completeness with which the declarations describe his intention or state of mind, and that, even if such declarations would have some moral weight in the determination of the issue before the court, they are not within any of the exceptions to the exclusion of hearsay which the common law recognizes.

The counsel for the defendant concede that the declaration in this case is not, under our decisions, admissible as a part of what has been called the *res gestæ*, although some courts have admitted similar declarations on this ground, and they also concede that, to make a declaration admissible on this ground, it must

accompany an act which directly or indirectly is relevant to the issue to be tried, and must in some way qualify, explain, or characterize that act, and be in a legal sense a part of it. They concede that, if this declaration is a part of the act of visiting Sarah L. Hubert, and tends to show the nature or purpose of the visit, the fact of the visit is not relevant to the issue; that it does not tend to show, directly or indirectly, that the defendant killed the deceased, or that she killed herself; that, if the evidence of this declaration is admissible, it is on account of the nature of the declaration, and not because it was made at this interview, and that if made to anybody else under the same circumstances it would have the same significance. They contend that the declaration is some evidence of the state of mind or intention of the deceased at the time she made it; that the intention which it tends to prove is a material fact, which, in connection with other facts proved, tends to support the theory of suicide; and that the state of mind or intention in the mind of a person, when material, can be proved by evidence of his declarations, as well as of his acts, particularly when that person has deceased and cannot be called as a witness, and the declarations were made before the controversy arose which is the subject of the trial.

The evidence that declarations were made must of course be of the same character as the evidence that the acts were done; that is, both must be proved by the testimony of witnesses under oath, and subject to cross-examination, and in either case the examination may extend to all the circumstances which tend to show the significance of the declarations or of the acts as indications of the existing state of mind or intention of the speaker or actor.

The fundamental proposition is, that an intention in the mind of a person can only be shown by some external manifestation, which must be some look or appearance of the face or body, or some act or speech; and that proof of either or all of these for the sole purpose of showing state of mind or intention of the person is proof of a fact from which the state of mind or intention may be inferred.

For example, the exceptions recite that, on the day when the deceased disappeared, Trefethen called at the house of her mother

" about ten in the forenoon, and was there some time with Tena, and that Tena that day appeared bright and cheerful and ' full of smiles,' but at times during the month prior thereto had been depressed in spirits."

The only apparent object of this testimony was to show that on the day she disappeared she was happy, and therefore could not have contemplated suicide.  Her bright and cheerful appear-. ance might have been real or feigned, but that was for the jury. If the deceased at the same interview had said, " I was never so happy in my life as I am to-day," it is contended that this declaration might be as significant of her state of mind as her cheerful appearance, and that speaking, as an indication of what is in the mind of the speaker, is as much an act as smiling or conduct generally.  The most obvious distinction between speech and conduct is that speech is often not only an indication of the existing state of mind of the speaker, but a statement of a fact external to the mind, and as evidence of that it is clearly hearsay.  There is, of course, danger that a jury may not always observe this distinction, but that has not availed to exclude testimony which is admissible for one purpose, and not admissible for another to which there is danger the jury may apply it.  A common instance of this is when it is a material fact in the case whether a person at a certain time said a certain thing. The testimony of a witness who heard him say it is always admitted, although this is not evidence that what that person said was true.

The present case discloses another instance.  Many witnesses testified to conversations with the defendant about the disappearance of Tena Davis and his connection with it.  What they said to him, and his silence or his replies, were only admissible so far as his failure to make reply, or his replies to what was said to him, under the circumstances, tended to show that he was guilty, but the testimony of what was said to him was not in and of itself evidence that the statements made to him were true.

Suppose that, at the interview between the deceased and the witness Hubert, if there was such an interview, the deceased had said that Trefethen was the father of her child; evidence that the deceased said this is clearly hearsay, and is not admis-

sible to prove that he was the father; but suppose that it had been denied at the trial that the deceased knew that she was pregnant, testimony that she had said that she was pregnant would be some evidence that she knew it.

If the day before her death she had written a note addressed to her mother, stating her condition and declaring her intention to drown herself, and had left it in her desk when she went from home the following day, the admissibility of such a letter in evidence after proof that she had written it depends upon the same considerations as the admissibility of evidence of similar oral declarations. Such a written declaration differs from an oral declaration only in this, that writing is often a more deliberate act than speaking; but this affects only the weight of the evidence. It may also be thought that speech is a less trustworthy indication of what is really in the mind of the speaker than acts or appearance; but this, if it be so, also affects the weight of the evidence.

Certainly, to confine the evidence to acts, appearance, or speech which is wholly involuntary, would be impracticable and unreasonable, for almost every expression of thought or feeling can be simulated; and although evidence of the conscious voluntary declarations of a person as indications of his state of mind has in it some of the elements of hearsay, yet it closely resembles evidence of the natural expression of feeling which has always been regarded in the law, not as hearsay, but as original evidence; 1 Greenl. Ev. § 102; and when the person making the declarations is dead, such evidence is often not only the best, but the only, evidence of what was in his mind at the time.

On principle, therefore, we think it clear that, when evidence of the declarations of a person is introduced solely for the purpose of showing what the state of mind or intention of that person was at the time the declarations were made, the declarations are to be regarded as acts from which the state of mind or intention may be inferred in the same manner as from the appearance of the person or his behavior, or his actions generally. In the present case the declaration, evidence of which was offered, contained nothing in the nature of narrative, and was significant only as showing the state of mind or intention of the deceased.

But it is argued that this is not the law, and that it is not competent for this court to change the established rules of evidence. We have been shown no case exactly like the present, but there are decisions closely analogous, and while they are not uniform, yet we think the weight of modern authority is in favor of admitting evidence like that offered in the present case for the purpose stated.

The latest decision on the subject is *Mutual Ins. Co.* v. *Hillmon*, 145 U. S. 285, and many of the cases are cited in the opinion. See *Commonwealth* v. *Fenno*, 134 Mass. 217. See also *Puryear* v. *Commonwealth*, 9 Cr. Law Mag. 788; *Blackburn* v. *State*, 23 Ohio St. 146; *Boyd* v. *State*, 14 Lea, (Tenn.) 161; *Goersen* v. *Commonwealth*, 99 Penn. St. 388; *Jumpertz* v. *People*, 21 Ill. 375; *Regina* v. *Jessop*, 16 Cox C. C. 204. It is argued that the decision of the Supreme Court of the United States in *Insurance Co.* v. *Mosley*, 8 Wall. 397, shows that that court is somewhat more liberal than our decisions warrant in admitting declarations as a part of the *res gestæ*, and that therefore this court will not follow the decision in *Mutual Ins. Co.* v. *Hillmon*, *ubi supra*. But, without considering whether we should follow *Insurance Co.* v. *Mosley* on the subject of *res gestæ*, we are aware of no difference in the decisions of the two courts on the admission of declarations to show the existing condition of the mind of the declarant, if we except our decision in *Commonwealth* v. *Felch*, *ubi supra*, which we will consider hereafter. This court admits evidence of exclamations and of declarations made to physicians as evidence of existing pain in suits for personal injuries. The plaintiff in such suits, by the common law, could not be a witness. In the case of wills, upon the issue of sanity or undue influence, this court has always admitted evidence of declarations which tend to show the condition of the mind of the testator, and his intention with regard to the disposition of his property, or his fear of the person alleged to have exercised undue influence. *Shailer* v. *Bumstead*, 99 Mass. 112. *Lewis* v. *Mason*, 109 Mass. 169. *May* v. *Bradlee*, 127 Mass. 414. *Potter* v. *Baldwin*, 133 Mass. 427. *Pickens* v. *Davis*, 134 Mass. 252. *Woodward* v. *Sullivan*, 152 Mass. 470. Upon an issue whether there was an intentional gift or gift *causa mortis*, the same rule prevails. *Whitney* v. *Wheeler*, 116 Mass. 490. *Whitwell* v. *Winslow*, 132

Mass. 307. *Lane* v. *Moore*, 151 Mass. 87. In *Lane* v. *Moore* this court say : " Where the mental condition of a person at a particular time is in issue, his appearance, conduct, acts, and declarations, after as well as before the time in question, have been held admissible in evidence if sufficiently near in point of time, and if they appear to have any tendency to show what that mental condition was. The question has usually arisen in cases involving the validity of wills, but the principle is the same where the validity of a gift is questioned, and where responsibility for crime is to be determined." See also *Howe* v. *Howe*, 99 Mass. 88.

It is to be noticed that in all these cases, except those for personal injuries, the person, evidence of whose declarations was admitted, was dead at the time of the trial. In actions by the husband for seducing his wife and alienating her affections from him, the declarations and statements of the wife made before the alleged seduction, indicating the state of her affections towards her husband, have uniformly been admitted upon the question of damages. *Palmer* v. *Crook*, 7 Gray, 418. *Jacobs* v. *Whitcomb*, 10 Cush. 255. In the last case the court say : " Whenever the mental feelings of an individual are to be proved, the usual expressions of such feelings are original evidence, and often the only proof of them which can be had." At common law, the wife could not be a witness in such a case.

In *Commonwealth* v. *Abbott*, 130 Mass. 472, the defendant, who was not the husband, being on trial for the murder of a married woman, for the purpose of showing " the existence of motive on the part of the husband of the deceased to commit the crime," offered evidence that the husband and wife quarrelled some years before the homicide, and that about six years before the homicide the husband was seen entering his own house with an axe in his hand, and that he then uttered threats against his wife and a man not named ; the defendant also offered to show the ill feeling of the husband towards the wife by statements not in the nature of threats made by the husband to a witness. The evidence offered was confined to acts done or statements made on or before the year 1877. The homicide was in January, 1880. The reputation of the wife for chastity between the years 1873 and 1877 had been bad. There was uncontroverted evidence that from May, 1879, the reputation of the deceased was not

questioned, and that the husband and wife continued to live together until her death. The justices trying the case excluded the evidence, and the defendant excepted. In that case, this court say : " The existence of a criminal motive is an element which it is often necessary to establish in order to give character to the acts and conduct of a party charged with or suspected of crime. In such case, the conduct or declarations of a party, both before and after the principal fact in issue, are admissible, provided they are sufficiently near in point of time, and sufficiently significant of the motive or intent to be proved. The rules which govern human conduct are to be reasonably applied in these cases, as in all other investigations of fact. They are to be so applied in all cases where the inquiry is as to the mental or moral condition of a person at the time a particular act was done. The intent or disposition, when it constitutes an element of crime, can only be ascertained, as all moral qualities are, from the acts and declarations of the party." This court, after saying that a certain discretion must be left to the justices trying the case, held that it did not appear that the court erred in excluding the evidence offered, because of its remoteness and of a subsequent change in the relations of the husband and wife. The court also say, what has been said many times in criminal cases where it was contended that some other person than the defendant committed the crime, that " the existence of ill feeling as a motive for the commission of crime will not alone justify submitting to a jury the question of the guilt of a person entertaining such feeling. It becomes material only when offered in connection with other evidence proper to be submitted, showing that the person charged with such ill feeling was in fact implicated in the commission of the crime." There is no intimation anywhere in the opinion, that if the evidence had related to a time very near the homicide, and if there had been evidence implicating the husband in the commission of the crime, evidence of his threats against the wife and of his statements showing ill feeling towards her would not have been admitted; and the language of the opinion implies that they would have been.

The admission of evidence of declarations in *Elmer* v. *Fessenden*, 151 Mass. 359, and in actions involving the question of domicile, *Kilburn* v. *Bennett*, 3 Met. 199, and in the Bankruptcy

Cases, *Bateman* v. *Bailey*, 5 T. R. 512, may perhaps be supported on the ground that the declarations were a part of the *res gestæ ;* but if these cases were not decided on this ground, they must be considered as applicable to the present case.

It is also argued that the deceased, with reference to the indictment, is not a party, and the question whether her declarations should be received as evidence is the same as if they were the declarations of any other person than the defendant, and that evidence of a confession by a third person that he killed the deceased, or of threats to injure the deceased made by a third person cannot be received. The decisions appear to be uniform that confessions of third persons cannot be received as evidence that they committed the crime, and that the defendant did not, and this for the plain reason that they are hearsay ; they are strictly narratives of past transactions not made under oath, and are only competent as admissions against the persons making them. The decisions are not uniform whether evidence of threats made by third persons to injure the deceased should be admitted or not as evidence for the defendant. In most of the cases where the evidence of such threats by third persons has been rejected in trials for murder, the threats were made too long before the homicide to be significant, or they were made under very different circumstances from those existing when the deceased was killed, or there was no other evidence tending to implicate these persons in the commission of the crime, and the evidence was rejected on one or all of these grounds. Evidence of threats of the deceased against the defendant have been admitted when the question was whether the defendant or the deceased made the first assault, and whether the defendant acted in self-defence. *Wiggins* v. *People*, 93 U. S. 465. If, on a trial for murder, the defendant proved that another person had ill will towards the deceased, and had an opportunity to commit the murder, and was found on the day when the murder was committed near the place of the murder under suspicious circumstances, with a weapon which might have been the instrument with which the deceased was killed, and that the conduct of this person after the murder was such as to indicate that he had committed it, it would seem that evidence that this person on the day before the murder had

threatened to kill the deceased if he could find him, and had said that he was searching for him that he might kill him, would be significant of an intent to kill him, and ought to be admitted, and we find no well considered case where, on this state of facts, such evidence has been rejected. See *State* v. *Beaudet*, 53 Conn. 536, and cases cited; *Holt* v. *State*, 9 Tex. App. 571; *Howard* v. *State*, 23 Tex. App. 265; *Cluverius* v. *Commonwealth*, 81 Va. 787, 826; *Walker* v. *State*, 63 Ala. 105; *Puryear* v. *Commonwealth*, 9 Cr. Law Mag. 788; *Worth* v. *Chicago, Milwaukee, & St. Paul Railway*, 51 Fed. Rep. 171.

In *Commonwealth* v. *Felch*, 132 Mass. 22, the defendant was charged with attempting to procure the miscarriage of Mary Ann Finley, on July 2, 1881, by the use of some instrument to the jurors unknown, in consequence of which she died on the same day. He contended at the trial, " that the operation was performed by Mary on herself; and there was evidence tending to show that it would have been possible for her to perform the operation on herself, considered as an operation, using for the purpose an ordinary lead pencil." He offered to prove by one Hughes, " that in the month of June next preceding the time of the alleged offence, Mary told her that she was pregnant by one Edward Titcomb, and that if Titcomb did not perform an operation to procure a miscarriage, or get some one to do so, she should perform the operation on herself with a lead pencil. It appeared that said declarations neither accompanied nor were explanatory of any act then done by her." The evidence was excluded, and the defendant excepted. This court in the opinion treat the evidence as hearsay, and say: " Such evidence is generally inadmissible. There are, however, several exceptions to this rule, and it is contended by the defendant that this evidence may properly be brought within some one of them. The only exception particularly designated is that relating to pedigree. This is indeed one of the well recognized exceptions to the general rule. That which is technically hearsay evidence is competent evidence upon a question of pedigree." An examination of the original papers shows that one of the contentions of the defendant was that the evidence that Mary said that Titcomb was the father of the child was some evidence in the case that he was the father, on the ground that it was a declaration in relation to the pedigree

of the child, and the argument was, that, if Titcomb was the father and the defendant was not, it was improbable that the defendant would attempt to procure a miscarriage. The decision of the court that no question of pedigree was involved in the case, and that for the purpose of proving that Titcomb was the father of the child the evidence was hearsay and inadmissible, is undoubtedly correct. But the counsel for the defendant in that case also contended that evidence of this declaration was admissible to show an intention in the mind of the deceased to perform the operation, and that this was material in connection with the evidence that the operation was one which she might have performed. There are some passages in the latter part of the opinion which perhaps tend to show that this argument did not wholly escape the mind of the justice who wrote it, but this particular aspect of the evidence is certainly not carefully considered, and no cases are cited, and the whole discussion in the opinion is such that this point in the determination of the case might not have received the attention it deserved. Upon a re-examination of the question, we are of opinion that, under the circumstances shown in *Commonwealth* v. *Felch,* a part of the evidence should have been admitted for the purpose of showing the intention in the mind of the deceased, and that to this extent that decision must be overruled.

It is not necessary in the present case to determine what limitations in practice, if any, must be put upon the admission of this kind of evidence, because all the limitations exist which have ever been suggested as necessary. The person making the declaration, if one was made, is dead ; she had an opportunity to commit suicide, and it was competent for the jury to find that she had a motive to commit it; and the declaration, if made, was made under circumstances which exclude any suspicion of an intention to make evidence to be used at the trial.

We cannot know whether the jury would or would not have found that the deceased was the person who had the interview with the witness, or whether they would have believed the witness, or whether, if they did believe her, they would have found that the deceased had really the intention which the declaration indicated, or whether the testimony, in view of all the evidence, would have affected the minds of the jury ; we can

only say, that on the facts recited in the exceptions the evidence cannot be considered as immaterial or unimportant. We are of opinion that the presiding judges erred in refusing to receive this evidence, and that, for this reason, the verdict against Trefethen must be set aside.

The remaining exceptions may be noticed, although it is not absolutely necessary to decide them. The first exception is to the refusal of the court to permit the counsel for the defendant to ask Charles E. Ray, one of the jurors, who was under examination by the court upon the *voir dire*, " to what extent he had read about the case in the newspapers." Ray was sworn as a juror and sat as a juror at the trial. The court read to all the jurors summoned Pub. Sts. c. 170, § 35, and c. 214, § 7, and then read a portion of what was said by Shaw, C. J., speaking for the full court, in *Commonwealth* v. *Webster*, 5 Cush. 295, 297, 298, viz. : " The statute intended to exclude any person who had made up his mind, or formed a judgment in advance, in favor of either side. Yet the opinion or judgment must be something more than a vague impression, formed from casual conversations with others, or from reading imperfect, abbreviated newspaper reports. It must be such an opinion upon the merits of the question as would be likely to bias or prevent a candid judgment, upon a full hearing of the evidence." The court also read the statement made by Chapman, C. J., speaking for the full court, in the trial of Samuel M. Andrews. Report of Trial of Andrews, by Charles G. Davis, p. 8. In the present case the court, having put to the juror Ray all the statutory questions, which he had answered to its satisfaction, refused to permit the counsel for the defendant to put the question we have quoted above. The statutes we have cited, as also the St. of 1887, c. 149, undoubtedly contemplate that other questions besides the statutory questions may be put to jurors by the court, or by the parties or their attorneys under the direction of the court. The Pub. Sts. c. 170, § 35, also provide that " the party objecting to the juror may introduce any other competent evidence in support of the objection." To determine whether a juror has such bias or prejudice that he does not stand indifferent in the cause, is often a matter of a good deal of delicacy and difficulty, because persons most affected with bias or prejudice are sometimes the least sensible

of it, but the extent to which the examination of the juror should be carried, after the statutory questions have been answered, has been said to be within the sound judgment and judicial discretion of the trial judge or judges. *Commonwealth* v. *Burroughs*, 145 Mass. 242. It is plainly impossible to exclude every juror who has read in the newspapers some statement of the case, because this might exclude every intelligent man in the county. It is well known, however, that there is a growing tendency in certain newspapers to publish, not only the evidence given in any preliminary hearing on a charge of crime, but all sorts of unverified rumors and of crude opinions concerning the probable guilt or innocence of suspected persons. This reprehensible practice in a case which excites great popular interest may sometimes require extraordinary care on the part of the court in the selection of jurors, if the accused is to have an impartial trial. If since the passage of the St. of 1887, c. 149, the discretion of the court trying the case in the matter of the examination of jurors, after the statutory questions have been put and satisfactorily answered, is absolute, we cannot revise it; if it is not, we cannot say, as matter of law, on the somewhat meagre statement contained in the exceptions, and in the absence of anything indicating what the counsel of the defendant had any reasonable expectation of proving, that the court erred in excluding the question.

The mother of the deceased, Mrs. Davis, testified to a conversation with the defendant on the morning of December 24, a part of which is as follows: "I asked him where Tena was. He said he had n't seen her. . . . Says I, 'Don't lie; she went out to meet you last night, on the corner of Ferry Street, and you have carried her off.' He said he had not. Said I, 'You have.'" The counsel for the defendant asked that this be stricken out, and objected to its admission. The court overruled the request, and admitted the testimony, and the defendant excepted. There are other examples of the admission of similar testimony against the objection of the defendant. It does not appear that the defendant testified as a witness in his own behalf, and no question arises of the admissibility of evidence to affect his credit as a witness. The exceptions recite that, "after Mrs. Davis had testified, the Commonwealth introduced

a large amount of testimony relating to the conduct of Tre-
fethen after the disappearance of Tena, including statements,
declarations, conversations, and conduct of Trefethen with
Mrs. Davis" and other persons named, the general character
of which is set out in the exceptions, and "that at the inter-
view with Mrs. Davis on the morning of December 24, when
accused by her of Tena's disappearance, he" (Trefethen) "shed
tears, and was greatly excited, and also . . . that at various
times in these interviews, during the period between December
23 and January 10, he met the statements quoted in this bill,
made to Mrs. Davis by Tena, and repeated to him by Mrs. Da-
vis or the officers in various ways, sometimes by explicit denial,
sometimes by silence, and sometimes by equivocal expressions,
such as, 'It must be a mistake,' 'It is all a mistake,' 'It must
be some other party'; from all which evidence the Common-
wealth claimed and argued, without objection, that these denials
of his relations with Tena, of her seduction, of the appointment
with her for the evening of December 23, and of his connection
with her disappearance and death, were false, and were made to
protect himself against the charge of murder."

If a defendant is charged with crime, and unequivocally
denies it, and this is the whole conversation, it cannot be intro-
duced in evidence against him as an admission. *Fitzgerald* v.
*Williams*, 148 Mass. 462. If any part of a conversation with
the defendant put in evidence tends to show directly or in-
directly that he is guilty of the crime charged, the defendant
has the right to have put in evidence all that was said to
and by him at the same time, and relating to the same sub-
ject, although it is in his favor. *Commonwealth* v. *Keyes*,
11 Gray, 323.

When a statement is made in the presence and hearing of a
defendant which, if true, tends to show that he is guilty, and
he remains silent or makes an equivocal reply, the rule of law
has been stated to be as follows: "The rule is that a state-
ment made in the presence of a defendant, to which no reply
is made, is not admissible against him, unless it appears that he
was at liberty to make a reply, and that the statement was
made by such person and under such circumstances as naturally
to call for a reply unless he intends to admit it. But if he

makes a reply, wholly or partially admitting the truth of the facts stated, both the statement and the reply are competent evidence." *Commonwealth* v. *Brown*, 121 Mass. 69, 80. *Commonwealth* v. *Kenney*, 12 Met. 235. *Commonwealth* v. *Galavan*, 9 Allen, 271. See *Commonwealth* v. *Densmore*, 12 Allen, 535. *Commonwealth* v. *Brown* was an indictment for procuring the miscarriage of one Ann Powers, otherwise called Emma L. Smith, and one Frances Ordway, otherwise called Frances A. Chase. In that case one George, a police officer, testified that he "took the defendant into the presence of Emma L. Smith and Frances A. Chase, and asked them in the defendant's hearing and presence if they knew him; both said that they knew him, one knew him as Dr. King, the other knew him as Dr. Brown. I asked them if he performed an operation on them, and they said he did. The defendant asked if they had been operated on previously by any other person; they said, No," etc. This testimony was admitted, against the objection of the defendant. The full court say: "In this case, when Emma L. Smith and Frances A. Chase stated that the defendant had performed an operation on them, he did not remain silent, but asked them in reply if they had been previously operated upon by another person. The jury might infer from this an admission by him of the truth of their statements." It is obvious that, when a defendant has replied to a statement made to him, which, if true, tends directly or indirectly to show that he is guilty of the crime charged, and the reply is not an unequivocal affirmation or denial of the truth of the statement, difficult questions must often arise in determining whether the reply has any such tendency to show a consciousness of guilt on his part as will warrant its admission as evidence against him. Perhaps a certain discretion must be left to the presiding judge or judges in view of all the circumstances of the case. This is also true when the conduct and declarations of the defendant are put in evidence for the purpose of showing a consciousness of guilt on his part. See *Commonwealth* v. *Piper*, 120 Mass. 185, 189.

The exceptions in the present case do not set out verbatim the whole conversation between Mrs. Davis and the defendant on the morning of December 24, and of that set out we cannot

say, as matter of law, that some of the replies were not such as to warrant their admission as evidence against the defendant. If these were admitted, the defendant had the right to have the whole conversation on the subject put in evidence. The logical effect of an unequivocal denial of guilt, if it have any effect, is in favor of the defendant, and the admission of the denials of the defendant, if the jury properly considered the evidence, was in favor of the defendant. This is shown in the attempt often made by a defendant, when the government has introduced evidence of a confession made on one occasion, to introduce evidence that on other occasions he has denied that he was guilty. While evidence that the defendant has knowingly made false statements in regard to many facts which are relevant to the issue is admitted against him, as tending to show his guilt, it is not competent for the government to contend that a denial of guilt is of itself evidence against the defendant. To argue that, by the other evidence, the defendant is shown to be probably guilty, and that therefore his denial of guilt is false, and is additional evidence against him, ought not to be permitted. When a defendant in a criminal case is shown to have knowingly made certain false statements of facts, and these facts are relevant to the issue, the fact that the defendant has knowingly made the false statements may have some tendency to show that he is guilty, but the jury must first be satisfied beyond a reasonable doubt that the defendant made the statements, and that they were false, and that the defendant knew that they were false, before any weight can be given to this evidence, unless the statements of themselves have some tendency to show his guilt. But when the defendant denies generally that he is guilty, this statement cannot be shown to be false except by proving that he is guilty beyond a reasonable doubt, and then it is unnecessary. If there is a reasonable doubt of his guilt on all the other evidence, the fact that he unequivocally denied his guilt is not of itself evidence against him, and the denial cannot be assumed to be false because it has not been proved to be false by sufficient evidence. Some of the denials of the defendant in the present case were denials of facts which were relevant to the issue, and not a general denial of guilt, and we do not know whether the evidence was not such as to satisfy the jury

beyond a reasonable doubt that these denials were knowingly false. Some of the evidence recited was competent on the ground that the conduct or replies of the defendant, in view of the statements made to him, had some tendency to show guilt on his part. If in one conversation some of the replies of the defendant had some tendency to show guilt, and some were explicit denials of guilt, we cannot say that the defendant has been prejudiced by the admission in evidence of all that was said at that interview directly or indirectly relating to his guilt or innocence, if the jury were properly instructed upon the application to be made of this evidence. We cannot presume that the court did not take pains properly to instruct the jury upon the legitimate use to be made of the evidence admitted, and to warn the jury that the statements made to the defendant were not to be considered, in and of themselves, as any evidence of the facts stated. On this part of the case the exceptions disclose no error of law.

*Verdict against Trefethen set aside.*