# DAWSON *v.* WAGGAMAN.

DECLARATIONS AS EVIDENCE; GIFTS CAUSA MORTIS; RES GESTÆ; WITNESSES, COMPETENCY OF.

1. Declarations made by a testator near enough to the time of the execution of his will to be regarded as part of the *res gestæ* of its execution are admissible in evidence to show the state of his mind and his intention in the disposal of his property.

2. A gift *causa mortis,* one given in contemplation of impending death, is in the nature of a testamentary disposition, and is governed by the same rules of law that obtain in reference to wills; so that declarations of the donor about the time of making it or at the time it is alleged to have been made are admissible if they constitute part of the *res gestæ* and tend to show his intention or mental condition.

3. Where in a suit in replevin by the representative of a decedent's estate, involving the right to the possession of certain promissory notes alleged by the plaintiff to have passed under the will of his decedent but claimed by the defendants, husband and wife, to have been given to the wife by the testatrix the day before her death, the declaration of the testatrix made a few days before her death, to the effect that she had made her will and was perfectly satisfied with it, has been admitted in evidence, the will itself, as part of the declaration so made, is admissible in evidence to show her intent in regard to the disposition of her property and impliedly to disprove the theory of a gift *causa mortis* from the decedent to the female defendant.

4. In such a case, the testimony of the female defendant as to conversations between the deceased and her husband, her codefendant, is inadmissible under D. C. Code, § 1064, providing that when one of the parties to a transaction has died the other party shall not be allowed to testify in regard to the transaction except under certain conditions.

No. 1379.    Submitted March 22, 1904.    Decided April 5, 1904.

HEARING on an appeal by the defendants from a judgment of the Supreme Court of the District of Columbia upon the verdict of a jury in an action of replevin to recover the possession of certain promissory notes.                              *Affirmed.*

The COURT in the opinion stated the case as follows:

This is an appeal from a judgment of the supreme court of the District in an action of replevin.

One Bridget Gleason, a resident of the District, died on Thursday, November 8, 1900, having been taken with what proved to be her last illness on the preceding Saturday. She left a will, duly executed, for the conveyance of both real and personal property, which had been made on June 1, 1900. Her estate amounted to about $12,000, the greater part of which consisted of promissory notes, secured by mortgage, and aggregating about $8,000. By her will she disposed of her whole estate. Most of it by this instrument she left in trust to the appellee, Thomas E. Waggaman, for the benefit of two grandnieces, Elizabeth Dawson and Teresa Dawson, daughters of a niece, the appellant Julia Dawson; and Waggaman was also named as the executor of the will. The will was offered for probate, and, pending proceedings thereon, the probate court appointed Waggaman as collector of the estate, and authorized him to institute proceedings to ascertain to whom belonged the promissory notes which have been mentioned, which were not found among her assets after the death of the testatrix, but were discovered in the possession of the appellant Julia Dawson, and her husband, the appellant Charles E. Dawson, who claimed them as their own by a gift from the deceased, Bridget Gleason, made late in the evening before her death; or rather, although they were in the custody and possession of the husband, the delivery is claimed to have been to the wife, the niece of the deceased. The delivery, if delivery there was, was without indorsement, although the notes were made payable to the order of Bridget Gleason, and required her indorsement for their effective transfer. She seems, however, to have been an illiterate woman, for she executed her will, not with her signature, but with her mark.

Thereupon the present suit in replevin was instituted. There having been a return to the writ issued thereon that the property had been eloigned, a suit in equity was instituted by the appellee against the appellants to get the notes into the control of

the court, and a decree was entered in it, by consent of the parties, in consequence of which the appellant Julia Dawson surrendered the notes to receivers appointed in that cause to hold them pending the determination of the title thereto in this cause.

To the declaration in replevin, the appellants as defendants pleaded the general issue. At the trial the plaintiff proved the ownership and possession of the notes by the deceased during her lifetime, and then, by the testimony of the reverend gentleman who had been her spiritual adviser during her last illness, proved a conversation which he (the spiritual adviser), at the instance of the appellant Julia Dawson, had with the deceased a few days before her death in regard to her temporal affairs, the substance of which was that she had settled her affairs, that she had made her will, and that she was perfectly satisfied with it. Then having proved the will and what the estate consisted of at the time of making it, the plaintiff offered in evidence the will itself as a declaration by the deceased of her purpose in regard to her property, and it was admitted in evidence over the objection of the defendants. Next there was testimony on behalf of the plaintiff that the several legal proceedings had been instituted which have already been mentioned; and there was also testimony on his behalf tending to show that, upon being interrogated after Bridget Gleason's death in regard to the notes in controversy, the defendants denied that they knew anything of them or that they had ever seen or heard of them.

The defendants then sought to prove by the testimony of the principal defendant, Julia Dawson, some conversations which she was supposed to have had with her aunt, Bridget Gleason, during her last illness, and objection having been interposed, the question does not seem to have been pressed. Instead of it an offer was made to prove by her some conversation, the nature of which is not disclosed, which took place between Bridget Gleason and the defendant Charles E. Dawson, and was overheard by the witness. The time at which this conversation is supposed to have occurred does not appear in the record; but the testimony was excluded under the provisions of § 1064 of the Code, which provides that, when one of the parties to a transaction has died,

or become insane, or otherwise incapable of testifying thereto, the other party shall not be allowed to testify in regard to the same transaction, except under certain specified circumstances not affecting the present case. Exception was taken to this ruling of the court.

This witness further testified that she claimed the notes in controversy; that the notes were a gift to her from her aunt; that the latter was eighty-five years of age at the time of her death, and died of pneumonia; and she denied that, in any conversation had after the death of her aunt, she had denied knowledge of the notes.

The appellant Charles E. Dawson, the husband of Julia Dawson, and the other defendant to the suit, was then allowed to testify over the objection of the plaintiff, who, however, reserved no exception to the testimony, so far as the record shows, that, on the evening before Mrs. Gleason's death, Mrs. Gleason, in a somewhat dramatic form, handed the notes in question to Mrs. Dawson, telling her at the same time that she had invested this money for her wherewith to buy a home; and that Mrs. Dawson thereupon handed the notes to witness.

The court charged the jury, and incorporated into the charge two instructions requested by the defendants. There is no exception to anything contained in this charge. The jury returned a verdict for the plaintiff, upon which there was judgment; and the defendants have appealed.

*Mr. Wilton J. Lambert* and *Mr. D. W. Baker,* for the appellants:

1. Under no circumstances can it be said that the declarations here in question and the will come under the head of *res gestæ*. *Insurance Co.* v. *Mosley,* 8 Wall. 397; *Vicksburg & M. R. Co.* v. *O'Brien,* 119 U. S. 99; *Wescott* v. *Wescott,* 75 Iowa, 628; *Porter* v. *Allen,* 54 Ga. 624; *Blaloch* v. *Miland,* 87 Ga. 573; *Parker* v. *Marston,* 27 Me. 196; *Throckmorton* v. *Holt,* 12 App. D. C. 552, 180 U. S. 552.

2. We desire further to call the court's attention to the ob-

jection taken to the offer of testimony on the part of the appellants to show that the witness, Mrs. Dawson, overheard a conversation of the deceased with her husband, and then the offer was made to prove the subject-matter of that conversation. The offer was objected to on the ground that it was inadmissible under § 1064 of the Code of the District, which objection was sustained and exception noted. Section 1064 uses the words, "declaration or admission of said deceased or otherwise incapable party," and reading the whole section would seem to imply that the declaration or admission referred to means a declaration or admission to the witness testifying, and not a declaration or admission made by a deceased party to a third person. The statute uses the words, "transaction or contract," and then the words—"shall not be allowed to testify as to any transaction with or declaration or admission of said deceased or otherwise incapable party." It is submitted that the evidence tendered in the offer of proof does not come within this section, and that therefore the court committed error in refusing to permit the witness to testify.

*Mr. William F. Mattingly* and *Mr. Irving Williamson* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

By the assignments of error in this case, two questions are raised: (1) Whether the will of Bridget Gleason was admissible in evidence either as a declaration of intention by her or as part of the *res gestæ* in connection with the possession of the notes in controversy by the appellants; (2) whether the testimony of Julia Dawson, one of the appellants, was admissible to be given in the case.

1. The determination of the first of these questions does not seem to be difficult. In their application to the present case there is really no discrepancy in the authorities—at all events, no such discrepancy as the Supreme Court of the United States, in the case of *Throckmorton* v. *Holt*, 180 U. S. 553, 45 L. ed.

664, 21 Sup. Ct. Rep. 474, has pointed out as existing. In that case the Supreme Court held that declarations of a testator, either before or after the date of an alleged will, are inadmissible as evidence in favor of or against the validity of the will, unless made near enough to the time of its execution to become part of the *res gestœ*. But the exception is admitted to be the law as much as the general rule, and that case, and the authorities cited in it to which the court gives its approval, sanctions the doctrine that declarations made by a testator near enough to the time of the execution of a will to be regarded as part of the *res gestœ* of its execution are admissible in evidence to show his state of mind and his intention in the disposal of his property. See *Lane* v. *Moore,* 151 Mass. 89, 21 Am. St. Rep. 430, 23 N. E. 828.

Now a *donatio causa mortis,* or the giving of a gift in contemplation of impending death, is in the nature of a testamentary disposition, and in this regard would be governed by the same rules of law that obtain in reference to wills. The declarations of the testator at or about the time of making it, or at the time of its being alleged to have been made, are admissible, if they constitute part of the *res gestœ* and tend to show the intention or mental condition of the donor. Upon this principle the appellants themselves were permitted to show what took place at and about the time of the alleged gift, although there was some ground for objection to the competency of the witness who testified in regard to it. So likewise the declarations of the deceased to her spiritual adviser in regard to her temporal affairs were properly admitted in evidence as part of the *res gestœ* to throw light upon the transaction. It is not claimed by the appellants that these declarations were inadmissible. Indeed, having themselves sought some such declaration from the deceased, and having induced her spiritual adviser to act as their intermediary for the purpose, they could not with any grace have objected to the testimony which he gave.

Now, in these declarations reference was made to the will, and the deceased expressed herself as perfectly content with it. By this reference and expression of affirmation of the will, that

document was imported into the *res gestæ* and made part of them. Even if it should be conceded that the will standing alone was executed at too remote a period from the death of the testatrix to be regarded as part of the *res gestæ* of the present transaction, yet its explicit reaffirmance by the testatrix on her death bed and in such close proximity to the occasion of this alleged gift has a very intimate bearing upon the question whether the alleged gift was actually made. We think that the will, as part of the declaration of the testatrix in her last illness, was properly admitted in evidence to show her intention in regard to the disposition of her property, and impliedly to disprove the theory of a *donatio causa mortis* from the deceased to the appellant Julia Dawson.

2. With reference to the second question, that is, whether the testimony of one of the defendants, Julia Dawson, was admissible to prove conversations between the deceased and the defendant Charles E. Dawson, it is sufficient to say that § 1064 of the Code is too plain and explicit to allow of any controversy in this regard. The provision is a just one, and the testimony was properly excluded.

We are of opinion that the judgment in this case was right and just, and that it should be affirmed, with costs.

And it is so ordered. *Affirmed.*