FREDERICK W. G. MAY & another, executors, *vs.* MARY P. BRADLEE & others.

Middlesex.    January 24; February 23. — September 4, 1879.

On an appeal from a decree of the probate court disallowing an instrument offered for probate as the will of A., on the ground that the instrument had been revoked by A., it appeared that A., who for many years had been under guardianship as an insane person, filed a petition to the probate court for the removal of his guardian, and, at the hearing on that petition, erased his signature to the will. The appellant contended that the whole proceeding was a plan organized by others to get at and destroy the will, and put in evidence A.'s acts and declarations at the time the signature was erased, and the petition and answer; and the appellee put in evidence the examination of A. at that hearing. *Held,* that the appellee had no ground of exception to the admission of the answer for the purpose of showing that the will was not legitimately a subject of investigation at that hearing.

On the issue whether an instrument offered for probate as a will was executed when the testator was of sound and disposing mind, a medical expert was interrogated, and answered, upon a hypothetical case based on the evidence, as to whether the testator was or was not of sound mind, and as to whether he was able to transact the general and ordinary business of life. He was then asked whether, assuming the facts stated to be true, the testator was competent to make a will. *Held,* that the judge presiding at the trial might properly refuse to allow this question to be put.

On the issues whether an instrument offered for probate as a will was executed when the testator was of sound and disposing mind, and whether it had been revoked by the testator through the undue influence of a third person, evidence was admitted, to show the condition of the testator's mind at the time, of a conversation between the testator and the person, a woman, through whose influence it was contended that the will was revoked, in which the testator said he was going to make a will and leave this person a certain sum, and that that person replied that she wanted the whole or nothing. *Held,* that the evidence was admissible on both issues.

On the issues whether an instrument offered for probate as a will was executed when the testator was of sound and disposing mind, whether it had been revoked by the testator, and whether he was unduly influenced to revoke it, evidence was admitted of the declarations of the testator made after he erased his signature to the will, to the effect that a certain person (through whose influ-

ence it was contended that the will was revoked) told him to erase his name, and that he felt he had to do as this person said. The jury were instructed that these declarations were not evidence to prove facts, but to show the condition of the testator's mind at the time, and what his testamentary capacity was. The jury found in favor of the will, and that it had not been revoked. *Held,* that the party objecting to the will had no ground of exception.

On the issue whether an instrument offered for probate as a will was executed when the testator was of sound and disposing mind, a person who had been the guardian of the testator for many years, while he was under guardianship as an insane person, but who was not an expert, was asked by the party propounding the will, whether he had, while guardian, observed anything which led him to infer in his own mind that his ward was crazy. The judge allowed the question to be put, with the explanation, that the question was whether the witness ever observed any fact which led him to infer that there was any derangement of intellect. *Held,* that the party objecting to the will had no ground of exception.

APPEAL by the executors of the will of Frederick May from a decree of the Probate Court disallowing the will. Trial before *Lord,* J., who allowed a bill of exceptions in substance as follows:

The case was tried in this court upon the following issues: 1st. Whether the alleged will was duly executed. 2d. Whether Frederick May, at the time of the execution of the will, was of sound and disposing mind and memory. 3d. Whether he was unduly influenced to make the alleged will. 4th. Whether he ever revoked the same. 5th. Whether he was unduly influenced to revoke the same.

1. The testator was under guardianship as an insane person from 1844 to the time of his death. The will offered for probate was dated July 14, 1870; and the alleged revocation took place in September 1874. It appeared in evidence on behalf of the appellants that, in the summer of 1874, a petition, signed and prosecuted by Sarah E. Skinner, (one of the persons charged with exerting undue influence in the making of the will and also in procuring a revocation of said will,) but afterwards signed also by Frederick May, had been presented to the Probate Court, for the removal of his guardian, Frederick W. G. May, and an answer thereto filed by said guardian; that a trial had been had thereon in that court, and the petition was dismissed and an appeal taken. The petition and answer were offered in evidence by the appellants. The petition was admitted without objection, but the appellees objected to the admission of the answer. The appellants claimed the right to show what the issue made up and

tried in that proceeding was, and how far the will produced there at the call of the ward, and alleged to have been there revoked by him, was legitimately the subject of investigation. Frederick W. G. May was one of the executors named in the alleged will, had children named as legatees in the will, and was one of the persons specified in one of the issues as having procured the will through undue influence. The answer contained various allegations by the guardian as to the character and conduct and treatment of Frederick May. It appearing that Frederick May erased his signature from the will, in open court, in the course of the hearing upon the petition, and the appellants claiming to have introduced evidence, from which the jury might infer that the whole proceeding for the removal of the guardian was a contrivance for the purpose of getting at and destroying the will, the judge admitted the answer in evidence, to show the issue in the Probate Court, and to exclude the idea that in any legitimate manner the will could have then been the subject of investigation.

The report of the examination of Frederick May at the hearing in the Probate Court was put in by the appellees, read in full to the jury, and used in the examination of their medical experts. The report of all the acts and declarations of the testator, and of all that took place at the erasing of the signature, was put in by the appellants, and the same was commented upon by the counsel of both sides, as part of the *res gestæ*, and the jury was permitted to consider it as such. The counsel for the appellees afterwards, during the charge to the jury, contended that the statements made by the testator in a private examination of Frederick May by the judge of probate, during this hearing, were also part of the *res gestæ*, and competent to prove the facts stated.

2. On the question of Frederick May's soundness of mind, the appellees called, as expert witnesses, several persons, who were superintendents of hospitals for the insane, and who attended the trial and heard the testimony offered on both sides. By the direction of the judge, these witnesses were interrogated upon hypothetical cases based upon the evidence. The counsel of the appellees had inquired, upon certain facts assumed, " What is your judgment upon the question, whether this man was or was

not of sane mind?" and one of these witnesses had replied, "My opinion is, he had an unsound mind;" and "Whether he was competent to transact the general, ordinary business of life?" and the witness had replied, "In my judgment, not." The counsel for the appellees then framed a hypothetical case, and inquired of the witness, "Whether, assuming the facts stated in such case to be true, the said Frederick May was competent to make a will?" The appellants objected, and the objection was sustained by the judge.

3. The appellants called Mrs. Catharine Stanwood as a witness; and she was asked whether Miss Skinner ever talked to Frederick May about a will. The witness having answered in the affirmative, the appellants proposed to ask her what Miss Skinner said. The appellees objected, on the ground that it was offered to show undue influence, a matter with which the heirs at law had no connection. The judge ruled that, upon the question of the testator's general testamentary capacity, anything that was said to him or by him was admissible. The witness was then asked, "What, if anything, did Miss Skinner say about a will to Mr. May, the ward, when you were present?" and made the following answer: "He turned to her and said, 'Sarah, I am going to make a will and leave you $20,000.' She whispered to him. He told me, she said she wanted the whole or none. Then I heard her say, 'Have n't I done everything I could for your comfort and happiness?' He said, 'I thought so;' and she replied, 'Yes, I have; a great deal more than I ought to have done.'"

4. The appellants contended, that certain declarations of the testator, made after the alleged revocation of the will, were admissible under the rule laid down in *Shailer* v. *Bumstead*, 99 Mass. 112; and inquired of a witness, Mrs. Stanwood, what Frederick May said to her about the will on December 3, 1874. The appellees objected; but the question was allowed by the judge, and the witness answered, "Mr. May said, 'She (Miss Skinner) told me to scratch my name out.' I said, 'Did you feel that you must do as she told you?' He answered, 'Yes. Perhaps you cannot understand it, but I always felt that what she said I must do. When she turned me out of her house, and told me to go, the time I went to Bennett's, I knew there was no use of

saying anything; I went; and it was always so. What she said I must do, I must do.'" Upon calling the attention of the judge to this declaration, and others of a similar character made to another witness the day after the alleged revocation, for instruction in the charge to the jury, the presiding judge said, " These statements, and those made before the judge of probate and at other times, are not evidence to prove facts; they are not evidence to prove that somebody helped him to make the will; but they are competent evidence to show the condition of his (the testator's) mind at the time; also what his testamentary capacity was. Only in this view are they competent, and therefore, whatever he said about the revocation or about the making, when they are recital of facts afterwards, they are not competent to prove the fact stated."

5. Frederick W. G. May, who had been the guardian of Frederick May for some years, but was not an expert, was asked the following question by the appellants: " Whether you ever observed, in all this long period, anything in Frederick May which led you to infer in your own mind, in common parlance, that he was a crazy or cracked man." The appellees objected; but the question was allowed by the judge, with this explanation: " I put it upon this ground; I want you to understand it precisely; the question is, whether he ever observed any fact which led him to infer that there was any derangement of intellect." The witness answered: " No, I don't recall anything of that sort now; he was the better for advice and guidance, like many another man. I never saw any crazy act. His temper would sometimes make him excitable, very irritable; but any absolutely crazy act or speech I don't recall, nor anything approaching to it, now."

The judge instructed the jury upon the whole case, and no exception was taken to the instructions. The jury found in favor of the appellants upon the first four issues, and made no finding upon the last issue. The appellees alleged exceptions.

*E. D. Sohier & R. Olney*, for the appellees.

*G. W. Phillips*, for the appellants.

COLT, J. This was an appeal from a decree of the Probate Court disallowing the will of Frederick May. The case was tried on certain issues framed for the jury; a verdict was rendered

sustaining the will; and the case comes before us on exceptions taken by the appellees to the admission of evidence.

1. There was no error in admitting as competent evidence the answer of the guardian to the petition of the testator for the removal of the guardian. The alleged revocation of the will, which was effected, as it was claimed, by the act of the testator in erasing his signature to it, took place at the hearing upon that petition, in the midst of the trial in the Probate Court. One of the propositions which the appellants undertook to prove in that trial was, that the will was not revoked, because the act was done under the undue influence of others. As bearing on the intention and the influence under which it was done, the appellants were entitled to show all the surrounding circumstances, and particularly the nature of the trial then going on, and the issues presented by the pleadings. It was contended by the appellants that the whole proceeding was a plan organized by others to get at and destroy the will, and that the evidence would warrant the jury in so finding. The issues raised by the petition and answer show that the will had no necessary connection with that proceeding. The appellees themselves put in a report of the examination of the testator at the hearing, and all his acts and declarations at the time of erasing the signature were put in by the appellants as part of the *res gestæ*, and the jury were permitted to consider them as such. The petition was not objected to; and the answer was not admitted by the court, as affording competent evidence of the facts therein stated, but only to show the issue pending, and that the will could not have been legitimately a subject of investigation. So restricted, we cannot say that the appellees suffered by the admission of the evidence.

2. Several witnesses were called by the appellees as experts in the knowledge of mental disease, and were interrogated and answered upon hypothetical cases, based on the evidence, as to whether the testator was or was not of sound mind, and as to whether he was able to transact the general and ordinary business of life. One of them was then asked whether, assuming the facts stated to be true, the testator was competent to make a will. The judge might properly refuse to allow the question to be put in this form, because it called for an opinion upon a

mixed question of law and fact, and not upon a question of medical science only. What degree of mental capacity is necessary to the making of a will is a question of law, which was not to be determined by the witness, and as to which he could not be assumed to be informed, unless the legal requisites of testamentary capacity were stated in the interrogatory, or otherwise explained to him. Without some such explanation, it would be impossible to say that the witness, the jury and the judge were not each governed by a different standard in settling the question.

3. The evidence of the conversation between Miss Skinner and the testator was properly admitted on the question of testamentary capacity. The jury were told that the statements were not evidence to prove facts, but were competent to show the condition of the testator's mind at the time. *Shailer* v. *Bumstead*, 99 Mass. 112. And besides, as all the issues were tried together, the conversation was admissible as showing the purpose of Miss Skinner with reference to the will, and a motive inducing her to procure its revocation.

4. The declarations of the testator after the alleged revocation were offered as competent in support of the allegation that the revocation was obtained by undue influence. They were admitted under the rule laid down in *Shailer* v. *Bumstead*, above cited, not to prove exterior acts of undue influence, but to show that the testator's mental capacity was such as to make him easily susceptible to such influence. We see no valid objection to the admission of the evidence for that purpose. And, besides, if erroneously admitted, it could have done the excepting party no harm, because the jury found that the will was never revoked. *Howe* v. *Ray*, 113 Mass. 88, 91.

5. A more difficult point is presented by the exception taken to the question put to the guardian of the testator, who was produced as a witness in support of the will. The interrogatory to this witness allowed by the judge was, whether he had ever observed any fact which led him to infer that there was in the testator any derangement of intellect. The witness was not a subscribing witness to the will, nor an attending physician, nor was he examined as an expert in mental disease. It is contended that the question called directly for an opinion as to the mental

condition of the testator, and was so framed as to compel the witness to give such opinion without stating facts. If such was the purpose of the question, and if, from an answer fairly responsive to it, the jury would be led to believe that the expressed opinion of the witness was to be received by them as competent evidence upon the issue on trial, then the objection is well taken.

It is settled in this state, whatever may be the rule elsewhere, that the witnesses to the will, the family physician who has been the medical adviser of the deceased, and witnesses who by special skill and experience are qualified as experts in the knowledge and treatment of mental diseases, are alone competent to give their opinions in evidence. The testimony of other witnesses is confined to a statement of the facts and declarations, manifesting mental condition, of which they have knowledge. *Hastings* v. *Rider*, 99 Mass. 622, 625, and cases there cited. *Barker* v. *Comins*, 110 Mass. 477, 487. *Nash* v. *Hunt*, 116 Mass. 237, 251.

In the practical application of this rule there is indeed some difficulty in confining the witness to the material facts, and preventing him from expressing directly or indirectly his own opinion upon the question. It is not easy for most witnesses to " distinguish between matters of fact and opinion on this subject; between the conduct and traits of character they observe, and the impression which that conduct and those traits create." *Baxter* v. *Abbott*, 7 Gray, 71, 79. But the rule is nevertheless adhered to, as affording for the guidance of the jury, under the instructions of the court, the most satisfactory means for determining the question of testamentary capacity. That question as it arises in the courts is not often presented in a form in which it can be wisely determined by the opinions of unskilled observers, however numerous. There are forms of partial delusion, the influence of which can be detected only by persons of uncommon skill and experience, which defeat a will executed as the result of such delusion. All forms of sanity and insanity, whether partial or general, are mental conditions which run into each other by insensible gradations, not easily separated and defined. The courts do not deal with the plain cases only; those which come near the line, or where the disease is partial and limited, are those which most commonly occupy attention, and

require the application of skill and experience. But the law is a practical science, and this rule of evidence is to be administered so as not needlessly to obstruct the administration of justice.

It is to be borne in mind, that the exception under consideration is only to the question put, not to the answer given. If the question, in the form and under the circumstances in which it was put, may fairly be interpreted as not calling for incompetent evidence, then the exception fails, whatever may have been the answer of the witness. If the answer contained incompetent evidence, it was for the opposing party to see that it was excluded by the judge from the consideration of the jury. The question, as modified by the judge, was only permitted as preliminary to other questions, calling for a statement of those facts as manifestations of mental condition which had been observed by the witness. The inquiry is as to the knowledge of facts. It does not call directly for the expression of an opinion, nor call for it indirectly, as competent evidence for the consideration of the jury upon the issue before them.

When the will was executed, the testator was under guardianship, and that implies some degree or form of mental unsoundness. The issue at the trial was whether that unsoundness amounted to testamentary incapacity. The guardian, to whom the question was put, might well be supposed to have knowledge of many things in the conduct and declarations of his ward, which would show the extent and nature of his mental infirmity. It was the apparent purpose of the question to draw the attention of the witness to that class of facts. If he said, in answer, that he had observed such facts, then he would have been required to state them in detail, as facts only for the consideration of the jury. After the question in its original form was objected to, the judge said, " I put it upon this ground; I want you to understand it precisely; the question is whether he ever observed any fact which led him to infer that there was any derangement of intellect." The emphasis is clearly on the words " any fact." It is proper for the judge, in order to make progress in the trial, to inform the witness as to the nature of the evidence required, and to confine his testimony to that. And if, with that purpose, he permits the witness in the first instance to exercise his own judgment and opinion as to whether he is possessed of the fact

inquired of, there is no good ground of exception. It is true, that, if he answers in the affirmative and states facts, the inference will be that in his own mind he has formed an opinion in accordance with what the facts indicate; and, on the other hand, if he answers in the negative, with sufficient knowledge of the testator's life, the inference will be, that he has an opinion the other way. But this difficulty is not to be avoided by changing the form of the question. It is impossible to prevent witnesses from having opinions, or to frame questions and restrain answers so as to leave no inference as to what such opinions are. Whatever facts a witness states, under any form of interrogatory, or without interrogatory, are stated because he has formed an opinion in advance that they support one side or the other, and prove sanity or insanity. The difficulty is inherent. While the witness is not permitted to express an opinion, he is also not permitted to delay and incumber the case with irrelevant or incompetent testimony for want of proper direction. To a limited extent the attention of the witness may be called by the form of the question to the testimony he is to give, and his judgment and opinion as to its relevancy may be properly called into exercise by the form of the question. The rule which excludes opinions as evidence for the consideration of the jury is not thereby defeated or impaired.

In the case at bar full instructions not reported were given upon the whole case, to which no exception was taken. It is to be presumed that the true rules of evidence were stated, and that they were thought not to conflict with the competency of the interrogatory in question. And, for the reasons above stated, a majority of the court is of opinion that this exception of the appellees is not well taken. *Exceptions overruled.*