Rufo, Robert C., J.
This is a land dispute in which Smaland Beach Association, Inc. (“Smaland”) filed suit against former members Arthur F. and Patricia A. Genova (“the Genovas”) to determine the legal boundary between the Genovas’ lot 18 and Smaland’s lot 19. The Genovas counterclaimed against Smaland and impleaded Smaland members Allan Bartlett, Louise Johnson, Mark Johnson, Russell Johnson, Carol Mahoney, and William Smith (“Third-Party Defendants"). The Genovas then moved for summaiy judgment. Several motions to strike followed. After a hearing and review of the record and the parties’ memoranda, for the reasons set forth below, the parties’ motions to strike are ALLOWED IN PART and DENIED IN PART, and the Genovas’ motions for summary judgment are DENIED. 
BACKGROUND
The Smaland Beach Association is a corporation owned by the residents of the Smaland Beach community, a subdivision located in Plymouth, Massachusetts near Island Pond. Island Pond is a body of water covering approximately 75 acres and is used for recreational purposes. The Genovas own lot 18 of the Smaland Beach subdivision and were members of the Smaland Beach Association prior to August of 2005. The northwesterly border of the Genovas’ lot 18 abuts Crescent Road, which is coincident with the shoreline of Island Pond. Lot 19 lies immediately east of lot 18 and is owned by Smaland. It, too, abuts Crescent Road on its northwesterly border.
Over the years, Smaland has used lot 19 and the portion of Crescent Road lying between lot 19 and Island Pond as a private beach and recreation area called Smaland Beach. Smaland contends that the strip of land running between the edge of Crescent Road and Island Pond adjacent to the Genovas’ lot 18 and bordering Smaland’s lot 19 (“the disputed area”) is also a part of Smaland Beach. The Genovas dispute this claim.
The Genovas purchased lot 18 on Februaxy 4, 1975 from Sven Gunnar Myrbeck (“Mr. Myrbeck”). Mr. Myrbeck described the conveyance as follows: “Lot 18 on a plan of ‘Great Herring Shores, Unit B’ drawn by *259 A.L. Wheeler, dated October 1, 1926, duly recorded with Plymouth County Deeds.” Similarly, prior deeds also describe lots 18 and 19 by referring to the same “plan of ‘Great Herring Shores, Unit B’ drawn by A.L. Wheeler” (“the Wheeler Plan”). This plan depicts lots 18 and 19 as bordering, but not including Crescent Road. Each lot line is accompanied by notations of distance which measure the lot boundaries only to the edge of the road.
Mr. Myrbeck received his deed from his mother, Anna Kristina Myrbeck, (“Ms. Myrbeck”) and she received hers from Louis B. Hall and Albert K. Kendrick (“Hall and Kendrick”). Hall and Kendrick’s deeds describe their holdings as follows:
a certain parcel of land situate on Great Herring Pond in Plymouth, Plymouth County, Massachusetts, bounded Easterly by Great Herring Pond and Carter’s River; Northerly by land now or formerly of E.E. Swift and others the line running through Island Pond; Northwesterly by land now or formerly of G.C. Tobey, formerly of Ichabod Morton; and Southerly by land now or late of Noble Swift and H.G.O. Ellis et al.
The aforementioned Wheeler Plan depicts this parcel as a large, roughly rectangular area. It includes both lots 18 and 19, as well as the entire Unit B area and land lying to the north, northwest, and south.
Through inadvertence, the Genovas constructed a shed and bathroom partially upon Smaland’s lot 19. Subsequently, they expanded the addition and increased the overhang of its roofline. At some point, the Genovas also added a stone retaining wall, plantings, and pathway on the land immediately surrounding this new construction. Today, the bathroom and shed encroach upon Smaland’s lot 19 by a total of 35 square feet, not including the landscaping and pathway. The Genovas discovered this encroachment while conducting a land survey in 2004. At the same time, they discovered an encroachment upon Crescent Road by their neighbor to the west, Carol Mahoney (“Ms. Mahoney”), owner of lot 17.
In front of lot 17, Crescent Road is 30 feet wide. However, since at least 1965, only 20 feet constitute passable road. At the edge of the passable portion lies a steep embankment, approximately three to four feet high and marked by randomly scattered stones intended to minimize erosion. To access her front yard from the lane, Ms. Mahoney installed a series of stepping stones leading up the embankment. The steps are located in the impassable portion of Crescent Road.
On January 20, 2005, Smaland brought suit against the Genovas seeking a determination of ownership of the disputed area, removal of the portion of the Genovas’ cottage which encroaches on its property, removal of obstructions to a walkway crossing lot 18, as well as a permanent injunction preventing the Genovas from interfering with Smaland’s use of the disputed area. Smaland also seeks damages for the Genovas’ alleged intentional interference with Smaland’s right of use. In the alternative, Smaland contends that even if the Genovas do own the disputed area, Smaland has openly and continuously used the area over the years in a manner which establishes a prescriptive easement.
On March 8, 2005, the Genovas counterclaimed against Smaland and impleaded the aforementioned Third-Party Defendants, challenging Smaland’s corporate makeup, asserting abuse of process, and seeking a declaratory judgment stating that they, the Genovas, own the disputed area and that any use of the properly by Smaland, including use of a dock and boat ramp, was permissive use based on neighborly courtesy. As to Smaland’s encroachment claim, the Genovas contend that the addition to their cottage should be allowed to stand as they have adversely possessed the underlying portion of Smaland’s lot 19, or in the alternative, have an easement permitting their use of the land.
On July 21, 2005, the Genovas moved this Court to enter summary judgment as to counts III, VII, and X of their counterclaim and as to counts I and V of Smaland’s amended complaint. In response, Smaland opposed the Genovas’ motion, submitted the affidavits of Lee P. Alfieri, Janet Alfieri, Grace Coombs, Elsa Anderson, Gustav Edward Olsson, and Leo T. Scarry, Esq. (“the Smaland Summary Judgment Affidavits”) in support of its opposition, and moved to strike the affidavit of Henry H. Thayer and the Hancock Plot Plan, both submitted with the Genovas’ motion for summary judgment.
The Genovas then moved to strike the Smaland Summary Judgment Affidavits and filed additional affidavits in support of their motion to strike, including the June 21, 2005 affidavit of Patricia Genova and the June 29, 2005 affidavit of Kathleen Genova, Esq. (“the Genova Motion to Strike Affidavits”). Smaland opposed the Genovas’ motion to strike, filed additional affidavits in support of their opposition and moved to strike portions of the Genova Motion to Strike Affidavits. In addition, Smaland submitted the affidavit of Mark Johnson pursuant to Mass.R.Civ.P. 56(f), apparently with the intention of moving the Court to refuse the Genovas’ application for judgment or to order a continuance to permit Smaland to obtain the affidavit of J. Randolph Parker, Jr., a registered professional land surveyor. The Genovas “opposed" Mr. Johnson’s affidavit. Subsequently, Smaland submitted Mr. Parker’s affidavit, which the Genovas have moved to strike.
DISCUSSION
The following discussion is separated into two sections. The first addresses the parties’ several motions to strike. The second addresses the Genovas’ Motions for Summary Judgment, considering all evidence *260 properly before the Court and in light of the Court’s rulings on the parties’ motions to strike.
A. The Parties’ Motions to Strike
Upon the motion of a party or sua sponte, the Court may strike “any redundant, immaterial, impertinent, or scandalous matter.” Mass.R.Civ.P. 12(f). Affidavits submitted in opposition to a motion for summary judgment “shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence and shall show affirmatively that the affiant is competent to testify as to matters stated therein.” Mass.R.Civ.P. 56(e). An affidavit that does not satisfy these requirements is immaterial as to summary judgment and a motion to strike is the proper procedural device for raising such insufficiency. See Fowles v. Lingus, 30 Mass.App.Ct. 435, 439-40 (1991) (holding that absent a motion to strike, the court may rely on an otherwise defective affidavit). Such motions “shall be served on the moving party with the opposition to the original motion . . . After receipt of an opposition or cross motion and supporting papers, the moving party may serve on the opposing party any appropriate motion to strike.” Super.Ct.R. 9A(b)(3); see also Mass.R.Civ.P. 12(f) (requiring that motion to strike be filed before responding to pleading, or within 20 days if no response is allowed).
Though in weighing summary judgment the Court is free to disregard vague or contradictory affidavits, O’Brien v. Analog Devices, 34 Mass.App.Ct. 905, 906 (1993), credibility is not at issue in a motion to strike. See, e.g., Commonwealth v. Geisler, 14 Mass.App.Ct. 268, 273 n.6 (1982). Consequently, affidavits that contest statements made by another affiant are relevant and material as to summary judgment, but not as to a motion to strike.
1.The Hancock Plot Plan
The Hancock Plot Plan is a map of the disputed boundary line between lots 18 and 19 at Smaland Beach. Smaland has moved to strike the map on grounds that it indicates that “the relevant portion of Crescent Road is thirty feet wide, but depicts it with a substantially greater width on the plan and as running by the shoreline of Island Pond.” In essence, this amounts to a challenge of the map’s reliability, which is a question of weight, not admissibility.
Smaland also objects to the map’s depiction of the Genovas’ property line extending to the shoreline of Island Pond and to its labeling of Island Pond as a “Great Pond,” a legal term defined under 310 CMR 9.02. Both constitute legal conclusions. As such, they are not binding on this Court. See United States v. Diehl, 276 F.3d 32, 42-43 (1st Cir. 2002); e.g., Santos v. Kim, 429 Mass. 130, 137 (1999). Nonetheless, the map is relevant evidence in that it shows where the Genovas contend the boundary lies. Therefore, the map is admissible and Smaland’s motion to strike it must be denied.
2.The Affidavit of Henry H. Thayer
Attorney Thayer’s affidavit consists of his expert legal opinion as to the dividing line between lots 18 and 19 at Smaland Beach. Smaland challenges Attorney Thayer’s opinion on the basis that his opinion is inconsistent, rests on “demonstrably incorrect” facts, and lacks appropriate citation to legal authority. More importantly, Attorney Thayer’s affidavit offers an interpretation and application of law to facts in order to reach a legal conclusion, i.e., where the boundary between lots 18 and 19 lies. Such testimony is not allowed. See Perry v. Medieros, 369 Mass. 836, 842 (1976); May v. Bradlee, 127 Mass. 414, 419 (1879). For this reason, Attorney Thayer’s affidavit must be stricken.[3]
3.The Smaland Summary Judgment-Affidavits
To determine the respective rights of the parties, the Court may need to determine the legal classification of Island Pond, i.e, whether it is a “Great Pond.” 310 CMR 9.02 defines what bodies of water fall into this categoxy:
Great Pond means any pond which contained more than ten acres in its natural state, as calculated based on the surface area of lands lying below the natural high water mark . . . The Department shall presume that any pond presently larger then [sic] ten acres is a Great Pond, unless the applicant presents topographic, historic, or other information demonstrating that the original size of the pond was less than ten acres, prior to any alteration by damming or other human activity.
310 CMR 9.02. Because Island Pond is presently well over ten acres in size, it is presumptively a great pond under the above regulation. The Smaland Summary Judgment Affidavits contain topographic and historic information which tends to rebut that presumption. Accordingly, the Genovas have moved to strike the Smaland Summary Judgment Affidavits on the basis that they “consist of inadmissible evidence ...” Again, these include the affidavits of Lee P. Alfieri, Janet Alfieri, Grace Coombs, Elsa Anderson, Gustav Edward Olsson, and Leo T. Scarry, Esq. The following addresses each affidavit in turn.
Lee P. Alfieri, Esq.
Attorney Alfieri’s affidavit contains hearsay in a number of areas. It purports to restate what is written on various deeds. See, e.g., paras. 7, 8, 14, 15. It restates the contents of lists published by the Commonwealth of Massachusetts. See, e.g., paras. 18, 19. It restates what is written on various maps. See, e.g., paras. 25, 28, 29. In addition, paragraph 16 appears to be speculation. Accordingly, these paragraphs contain inadmissible evidence and must be stricken from the record.
Janet Alfieri
Ms. Alfieri’s affidavit contains hearsay as well. Paragraph 4 restates what is written on a map of Plymouth. *261 Accordingly, paragraph 4 must be stricken as inadmissible evidence.
Grace Coombs
Paragraph 8 of Ms. Coombs’ affidavit contains hearsay in that it restates what is written on a map. In addition, paragraph 4 does not appear to be based on Ms. Coombs’s personal knowledge. She is therefore not competent to testify as to the facts contained in that paragraph. Accordingly, paragraphs 4 and 8 must be stricken.
Leo T. Scarry, Esq.
Like the affidavit of Attorney Thayer, Attorney Scarry’s affidavit offers an interpretation and application of law to facts in order to reach a legal conclusion, i.e., where the boundary between lots 18 and 19 lies. As previously stated, such testimony is not allowed. See Perry, 369 Mass. at 842; May, 127 Mass. at 419. For this reason, Attorney Scarry’s affidavit must be stricken.
Gustav Edward Olsson
Mr. Olsson’s affidavit contains hearsay in a number of areas in that he purports to restate what he has heard others say. Consequently, paragraphs 2, 13, 18, 19, 46, 49, 50, and 51 must be stricken.
Elsa Anderson
Ms. Anderson’s affidavit contains hearsay in that she purports to restate what she has heard others say. Accordingly, paragraphs 37, 38, 39 and 41 must be stricken.
Supplemental Affidavit of Gustav Edward Olsson
The Genovas assert that Olsson does not have personal knowledge of the interior of their cottage. However, one need not be the owner of a residence to possess knowledge of its interior. In addition, the Genovas also argue that Olsson’s memory is unreliable. That, however, is a question of weight, not admissibility. For these reasons, the Genovas’ motion must be denied as to Olsson’s supplemental affidavit.
4.The Genova Motion to Strike Affidavits
The Genova Motion to Strike Affidavits refer to the June 21, 2005 affidavit of Patricia Genova and the June 29,2005 affidavit of Kathleen Genova, Esq. The Genovas submitted these in support of their motion to strike the above Smaland Summary Judgment Affidavits and have indicated that they are submitted only for the purpose of their motion to strike. The Genovas correctly note that Mass.RCiv.P. 56(e) applies only to affidavits in support of summary judgment. Thus, the affidavits in support of a motion to strike need not be admissible at trial. Nonetheless, the affidavits may still be stricken if found to contain “any redundant, immaterial, impertinent, or scandalous matter.” Mass.RCiv.P. 12(f).
Patricia Genova
Ms. Genova’s affidavit consists of two paragraphs, the first serving only to identify Ms. Genova as a party to the action. Paragraph 2 of Ms. Genova’s affidavit consists of hearsay in that she purports to restate what the Plymouth Town Engineer told her some time ago. This information only serves to cast doubt on the reliability of Smaland’s submissions in support of summary judgment. Such evidence would be proper and relevant as to summary judgment if submitted in an admissible form. As hearsay, however, the statement may only be considered in connection with the present motion to strike. Because reliability is not at issue in a motion to strike, this information is immaterial. Ms. Genova’s affidavit, therefore, must be stricken.
Kathleen Genova, Esq.
Smaland moves to strike several paragraphs of Attorney Genova’s affidavit, largely on grounds of reliability and hearsay. What is not apparent is how any of the information in Attorney Genova’s affidavit raises or lends support to the Genovas’ motion to strike, that is, it does not call into question whether the Smaland Summary Judgment Affidavits contain redundant, immaterial, impertinent, or scandalous matter. Consequently, Attorney Genova’s affidavit itself is immaterial as it is submitted only in connection with the Genovas’ motion to strike. Therefore, Attorney Genova’s June 29, 2005 affidavit must be stricken.
5.The Affidavit of Mark Johnson
Smaland submitted the affidavit of Mark Johnson pursuant to Mass.RCiv.P. 56(fi, apparently with the intention of moving the Court to refuse the Genovas’ application for judgment or to order a continuance to permit Smaland to obtain the affidavit of J. Randolph Parker, Jr., a registered professional land surveyor. Mr. Johnson’s affidavit contains no more than an explanation of why Smaland feels the need to obtain Mr. Parker’s affidavit. Because Smaland has since submitted Mr. Parker’s affidavit, the issue now appears moot. The motion to strike Mr. Johnson’s affidavit is therefore denied.
6.The Affidavit of J. Randolph Parker, Jr.
J. Randolph Parker, Jr. is a registered professional land surveyor whom Smaland retained to provide a professional opinion as to the location of the boundary line between lots 18 and 19. Smaland has submitted his affidavit in support of its opposition to the Genovas’ motion for summary judgment. The Genovas move to strike Mr. Parker’s affidavit on the bases that he neglected to consider all relevant deeds in forming his opinion and that he attempts to apply certain statutes to the facts of this case, but lacks any legal credentials to do so. As to the former, whether Mr. Parker considered all relevant deeds raises only a question of reliabilify. Again, this is something not at issue in a motion to strike. As to the latter contention, Mr. Parker does in fact apply G.L.c. 91 and G.L.c. 183, §58 to the facts of this case, reaching a legal conclusion in so doing. This, as previously stated in regard to the affidavits of Attorneys Thayer and Scarry, is not permissible. In addition, other paragraphs within Mr. Parker’s affidavit contain inadmissible hearsay evi *262 dence. For these reasons, paragraphs 10, 11, 12, 14, and 15 of Mr. Parker’s affidavit must be stricken.
B. The Genovas’ Motion for Summary Judgment
This court grants summary j udgment only when there are no genuine issues of material fact and the record entitles the moving party to judgment as a matter of law. See Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983). The moving party bears the initial burden of establishing that there is no dispute of material fact on every relevant issue. See Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by negating an essential element of the non-movant’s claim or by demonstrating that the evidence is insufficient to establish the claim. See Kourouvacalis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991). The opposing party must then establish that a genuine issue for trial exists by setting forth specific facts with affidavits, deposition testimony, answers to interrogatories, or admissions. See Mass.R.Civ.P. 56(e). If the record so warrants, judgment may pass for the non-moving party “even in the absence of a cross motion for that relief.” Charles Bank Apartments, Inc. v. Boston Rent Control Admin,, 379 Mass. 635, 636 n.2 (1980).
In the case at bar, the Genovas move for summary judgment on three issues. The first concerns the ownership of the disputed area; the second concerns the encroachment of the addition to the Genovas’ cottage upon lot 19; the third concerns the encroachment of lot 17 upon Crescent Road. Each issue is respectively addressed below.
1. Ownership of the Disputed Area
Count V of Smaland’s Amended Complaint and Count III of the Genovas’ Counterclaim both address the issue of who owns the disputed area, that is, the strip of land running between the edge of Crescent Road and Island Pond in front of the Genovas’ lot 18 and bordering Smaland’s lot 19. To determine the ownership of this area, the Court first looks to the deed to lot 18.
On February 4, 1975, Sven Gunnar Myrbeck conveyed lot 18 to the Genovas describing it as follows: “Lot 18 on a plan of ‘Great Herring Shores, Unit B’ drawn by A.L. Wheeler, dated October 1, 1926, duly recorded with Plymouth County Deeds.” Similarly, a prior deed from Abert K. Kendrick and Louis B. Hall to Anna Krisitina Myrbeck describes lots 18 and 19 by referring to the same “plan of ‘Great Herring Shores, Unit B’ drawn by A.L. Wheeler.” When a recorded plan, such this, is referenced in a deed, it “becomes a part of the contract so far as may be necessary to aid in the identification of the lots and to determine the rights intended to be conveyed.” Reagan v. Brissey, 446 Mass. 452, 458 (2006), quoting Wellwood v. Havrah Mishna Anshi Sphard Cemetary, 254 Mass. 350, 354 (1926); see also Rufford G. Patton & Carroll G. Patton, Patton On Land Titles, §120 (2d ed. 1957).
The Wheeler plan referenced in the deeds above depicts lots 18 and 19 as bordering, but not including Crescent Road. Each lot line is accompanied by notations of distance which measure the lot boundaries only to the edge of the road. Nonetheless, “(t]he presumption has long been that, even where the specified boundary line is clearly at the side of the way . . . the deed was intended to transfer the abbreviated rights to the fee of the way as well.” Smith v. Hadad, 366 Mass. 106, 108 (1974), citing G.L.c. 183, §58.
In 1971, the Legislature enacted G.L.c. 183, §58 “to meet a situation where a grantor has conveyed away all of his land abutting a way or stream, but has unknowingly failed to convey any interest he may have in land under the way or stream, thus apparently retaining his ownership of a strip of the way or stream.” Rowley v. Mass. Elec. Co., 438 Mass. 798, 803 (2003), quoting 1971 House Doc. No. 5307. “Its effect was to quiet title to sundry narrow strips of land that formed the boundaries of other tracts, by establishing an authoritative rule of construction for all instruments passing title to real estate abutting a way.” Id. (internal quotations omitted). The statute reads as follows:
Every instrument passing title to real estate abutting a way, whether public or private, watercourse, wall, fence or other similar linear monument, shall be construed to include any fee interest of the grantor in such way, watercourse or monument, unless (a) the grantor retains other real estate abutting such way, watercourse or monument, in which case, (i) if the retained real estate is on the same side, the division line between the land granted and the land retained shall be continued into such way, watercourse or monument as far as the grantor owns, or (ii) if the retained real estate is on the other side of such way, watercourse or monument between the division lines extended, the title conveyed shall be to the center line of such way, watercourse or monument as far as the grantor owns, or (b) the instrument evidences a different intent by an express exception or reservation and not alone by bounding by a side line.
G.L.c. 183, §58. In other words, a grantee’s fee interest extends “to the centerline of the road if the grantor retains property on the other side of the way or for the full width if he does not . . . unless ‘the instrument evidences a different intent by an express exception or reservation and not alone by bounding a side line.’ ” Tattan v. Kwlan, 32 Mass.App.Ct. 239, 242-43 (1992), quoting G.L.c. 183, §58.
To apply G.L.c. 183, §58 to the facts of the case at bar, it is necessary to determine whether the Genovas’ grantor, Mr. Myrbeck, retained other real estate on the other side of Crescent Road. Based on the deeds presented to the Court, there is no evidence that he did so. Therefore, the Genovas received all that Mr. Myrbeck owned. Thus, the question arises, what did Mr. Myrbeck and his predecessors in interest own? To answer this question, the Court again looks to the chain of title and G.L.c. 183, §58, which is “to be retroactively applied to all prior instruments . ..” Rowley, 438 Mass, at 803.
*263 Mr. Myrbeck’s predecessor in interest was his mother, Anna Kristina Myrbeck. Ms. Myrbeck received her deed from Louis B. Hall and Albert K. Kendrick, whose deeds describe their holdings as follows:
a certain parcel of land situate on Great Herring Pond in Plymouth, Plymouth County, Massachusetts, bounded Easterly by Great Herring Pond and Carter’s River; Northerly by land now or formerly of E.E. Swift and others the line running through Island Pond; Northwesterly by land now or formerly of G.C. Tobey, formerly of Ichabod Morton; and Southerly by land now or late of Noble Swift and H.G.O. Ellis et al.
The Wheeler Plan depicts this parcel as a large, roughly rectangular area. It encompasses both lots 18 and 19, as well as the entire Unit B area and land lying to the north, northwest, and south. Thus, it would appear that Hall and Kendrick retained real estate on the other side of Crescent Road. In the immediate vicinity of lots 18 and 19, however, the Wheeler Plan depicts that real estate as consisting only of pond bed. Opposite lots 18 and 19, the plan shows the pond commencing immediately on the road’s northwestern flank. By contrast, the plan indicates an express “15 FT. Reservation” of land along the shore beginning near lot 13 and continuing northward. This attests to Hall and Kendrick’s lack of intention to retain any land, other than possibly the pond bed, on the opposite side of Crescent Road near lots 18 and 19. Had they intended otherwise, they would have expressly indicated as they did in regard to lot 13. The land today comprising the disputed area, therefore, must be considered either part of the original Crescent Road or the result of accretion or reclamation. In fact, there is evidence that sand had been dredged by hand from the pond bed and spread over the shoreline in the viciniiy of the disputed area to establish a beach.
Despite the language in Hall and Kendrick’s deeds and depictions in the Wheeler Plan, there is considerable doubt as to whether Hall and Kendrick ever received title to the bed of Island Pond. The Genovas correctly note that Island Pond, which presently spans well over ten acres, is presumptively a great pond. See 310 CMR 9.02 (“Great Pond means any pond which contained more than ten acres in its natural state”). Because the beds of Great Ponds belong to the Commonwealth, the Genovas maintain that Hall and Kendrick could not have held any interest in the pond bed. However, Smaland has presented evidence tending to rebut this presumption in the form of historic maps of the area and lists of great ponds compiled by various state agencies. In addition, even assuming that Island Pond is not a great pond, it is not clear that Hall and Kendrick’s predecessors in interest held a fee in the pond to convey. In fact, Kendrick’s deed references a prior deed which states, “(s]aid lot contains 245 and 102/160 acres, exclusive of Ponds.” For these reasons, there are disputed issues of material fact as to what Hall and Kendrick owned, and therefore, it is unclear what the Genovas ultimately received in relation to Crescent Road. Consequently, summary judgment is not appropriate on this issue.
2. Ownership and Use of Land Underlying the Genovas’ Addition
Count I of Smaland’s Amended Complaint and Count VII of the Genovas’ Counterclaim both concern a bathroom, shed, retaining wall, plantings, and pathway constructed by the Genovas along the boundary of lots 18 and 19. Through inadvertence, the Genovas constructed the shed and bathroom partially upon Smaland’s lot 19. Subsequently, they expanded the addition and later increased the overhang of its roofline. At some point, the Genovas added a stone retaining wall, plantings, and pathway on the land immediately surrounding the new construction. Today, the bathroom and shed encroach upon Smaland’s lot 19 by a total of 35 square feet, not including the landscaping and pathway.
An individual claiming title by adverse possession in this Commonwealth bears the burden of establishing “all necessary elements of such possession.” Lawrence v. Town of Concord, 439 Mass. 416, 421 (2003), quoting Holmes v. Johnson, 324 Mass. 450, 453 (1949). These elements include “nonpermissive use which is actual, open, notorious, exclusive and adverse for twenty years.” let, quoting Ryan v. Stavros, 348 Mass. 251, 262 (1964); see also G.L.c. 260, §21.[4] “The guiding principle behind these elements of adverse possession is not to ascertain the intent or state of mind of the adverse claimant, but rather to provide notice to the true owner, allowing for the legal vindication of property rights.” Totman v. Malloy, 431 Mass. 143, 145 (2000). The parties’ subjective beliefs as to the true location of the boundaries of the property are not relevant. See Lawrence, 439 Mass. at 422 (discounting true owner’s lack of knowledge); Boutin v. Perreault 343 Mass. 329, 331-32 (1961) (discounting mutual misunderstanding as to boundary); Van Allen v. Sweet, 239 Mass. 571, 574 (1921) (discounting adverse possessor’s lack of knowledge as to her encroachment). Finally, one without color of title may gain only title to the area actually occupied. See Ottavia v. Savarese, 338 Mass. 330, 335 (1959).
In the case at bar, the Genovas’ addition of a shed, bathroom, and landscaping may suffice to establish use which is actual, open, notorious, exclusive, and adverse. See Collins v. Cabral, 348 Mass. 797, 798 (1965) (maintenance of lawn and grading of land sufficient); Kershaw v. Zecchini 342 Mass. 318, 320 (1961) (construction of house sufficient); Matthys v. First Swedish Baptist Church 223 Mass. 544 (1916) (overhang of roof sufficient). Smaland, however, contests the dates on which these items were constructed, thereby disputing the Genovas’ satisfaction of the 20-year statutory period. While the Genovas contend that they added the bathroom and shed in 1976, expanded them in 1985, and increased the roof overhang in the early 1990s, Smaland *264 relies on the supplemental affidavit of G. Edward Olsson, in which Mr. Olsson contends that the Genovas did not construct the additions until approximately 1985. In his recollection, the Genovas then expanded them in the early 1990s and at the same time, added the landscaping. Consequently, Smaland argues, due to the tolling of the statutory period by the filing of this action in January of 2005, the Genovas narrowly fail to satisfy the 20-year statutory period for any portion of the addition or landscaping.
In response, the Genovas claim that Mr. Olssoris affidavit contradicts his prior deposition testimony and note that “the nonmoving party cannot create a material issue of fact and defeat summary judgment simply by submitting affidavits that contradict its previously sworn statements.” NG Bros. Const. Inc. v. Cranney, 436 Mass. 638, 648 (2002). The Genovas have also submitted a photograph marked “Sep 81" in the lower left comer which shows a portion of a shed, retaining wall, and plantings. For these reasons, the Genovas urge this Court to disregard Mr. Olssoris affidavit.
Despite the foregoing, the record before this Court does not include a prior, contradictory deposition by Mr. Olsson. Moreover, while the photograph does tend to cast doubt on the reliability of Mr. Olsson’s recollection, it still leaves open disputed issues of fact concerning what was built when. The photograph does not show the entire addition and landscaping. Because the Genovas lack color of title to the area, they only may obtain title to the areas actually occupied for the entire 20-year period and here, it is undisputed that the encroachment grew over time. Therefore, what the Genovas actually occupied for the required 20-year period, if indeed anything, remains a disputed issue of material fact. Consequently, this issue is not ripe for summary judgment.
3. The Encroachment of Lot 17 on Crescent Road
Count X of the Genovas counterclaim seeks removal of a “retaining wall and stairs that encroach on Crescent Road” from Carol Mahoney’s lot 17. In front of lot 17, Crescent Road is 30 feet wide. However, since at least 1965, only 20 feet constitute passable road. At the edge of the passable portion lies a steep embankment, approximately three to four feet high and marked by randomly scattered stones intended to minimize erosion. To access her front yard from the lane, Ms. Mahoney installed aseries of stepping stones leading up the embankment. The steps are located in the impassable portion of Crescent Road.
A conveyance of “land bounded on a street or way” includes an easement in the street or way which “is not only coextensive with the land conveyed, but embraces the entire length of the way, as it is then laid out or clearly indicated and prescribed.” Murphy v. Mart Realty of Brockton, Inc., 348 Mass. 675, 677 (1965); accord Hill v. Taylor, 296 Mass. 107, 116 (1936); Fox v. Union Sugar Refinery, 109 Mass. 292, 296 (1872). In addition, “(t]he owner of the property burdened by the easement. . . may not use his land in a way that will interfere with the easement owner’s right of use.” Texon, Inc. v. Holyoke Mach. Co., 8 Mass.App.Ct. 363, 365 (1979); accord Guillet v. Livernois, 297 Mass. 337, 340 (1937). He may, however, “make reasonable repairs and improvements,” including the construction of walkways. See Guillet, 297 Mass. at 340-41. “Whether improvements made are reasonable in view of the equal rights of others is largely a question of fact.” Id. at 341.
In the case at bar, the Genovas have produced a survey affirmatively showing an encroachment by lot 17 on Crescent Road. Ms. Mahoney has not produced anything to rebut that showing. This encroachment, however, lies within a portion of Crescent Road that is and has been impassable for quite some time. Her construction of a stairway down to the passable portion of the street therefore does not appear to be an unreasonable imposition on the equal rights of adjacent land owners. In fact, the Genovas fail to identify any specific use of Crescent Road that Ms. Mahoney’s stairway has adversely impacted. Accordingly, summary judgment is not appropriate as to Count X.
CONCLUSION
For the foregoing reasons, the parties’ motions to strike are ALLOWED IN PART in accordance with the foregoing discussion, and DENIED IN PART as stated above. The Genovas’ motions for summary judgment are DENIED.

The legal conclusions in Attorney Thayer’s affidavit differ from those contained in the Hancock Plot Plan. While the latter contains bare assertions, such as Island Pond is a Great Pond, the former constitutes an expert opinion on what the law says and how it affects the facts of this case. For this reason, the Hancock Plot Plan is admissible, while Attorney Thayer’s affidavit is not.

On the rare occasion, the courts of this Commonwealth have required the Independent showing of a “claim of right” as an addition element. See Lawrence, 439 Mass. at 421 n.5; Medonca v. Cities Serv. Oil Co. of Pa., 354 Mass. 323, 326 (1968); Bond v. O’Gara, 177 Mass. 139, 144 (1900). Today, this element is routinely satisfied by evidence that the trae owner of the property received notice of the adverse occupation of the land by actual, open, notorious and exclusive use. See Totman v. Malloy, 431 Mass. 143, 145 (2000); Ottavia v. Savarese, 338 Mass. 330, 333-34 (1959). The only situations in which independent evidence of a claim of right may still be required are “the situation where a disclaimer by the user to the tme owner of any purpose to gain rights by adverse possession lulls the latter into inaction, and the situation involving a ‘mere squatter’ where the possession is doubtful and equivocal in fact.” Ottavia, 338 Mass, at 333, quoting 3 Thomas E. Atkinson et al., American Law of Property §15.4 (1952).